UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

THE BROOKLYN UNION GAS COMPANY,
*doing business as* NATIONAL GRID NY,

                Plaintiff,

           v.

CONSOLIDATED EDISON COMPANY OF NEW
YORK, INC., THE CITY OF NEW YORK, THE
UNITED STATES OF AMERICA, THE UNITED
STATES DEPARTMENT OF DEFENSE, THE
UNITED STATES DEPARTMENT OF THE
NAVY, THE UNITED STATES DEPARTMENT
OF THE ARMY, THE UNITED STATES COAST
GUARD, THE FEDERAL MARITIME
COMMISSION, THE UNITED STATES POSTAL
SERVICE, THE UNITED STATES GENERAL
SERVICES ADMINISTRATION, ASTORIA
GENERATING COMPANY, L.P., BALLANTYNE
LEGACY HOLDINGS, LLC, BAYSIDE FUEL
OIL CORPORATION, BEAZER EAST, INC., THE
BRINK'S COMPANY, BROOKLYN
IMPROVEMENT COMPANY, DUN AND
BRADSTREET CORP., HESS CORP., THE
KRAFT HEINZ COMPANY, MCIZ CORP., 36-
2ND J CORP., 15 SECOND AVENUE LLC, 107
SIXTH STREET LLC, METROPOLITAN
TRANSPORTATION AUTHORITY, MRC
HOLDINGS, INC., NEW YORK CITY
ECONOMIC DEVELOPMENT CORP., NEW
YORK CITY INDUSTRIAL DEVELOPMENT
AGENCY, NEW YORK CITY TRANSIT
AUTHORITY, NL INDUSTRIES, INC.,
NORTHVILLE INDUSTRIES CORP., PHILLIPS
66 COMPANY, POWER AUTHORITY OF THE
STATE OF NEW YORK, PUGET SOUND
COMMERCE CENTER, INC., REXAM
BEVERAGE CAN COMPANY, SPX
TECHNOLOGIES, INC., STAUFFER
MANAGEMENT COMPANY, TDA
INDUSTRIES, INC., TEXACO, INC., UNION OIL

**MEMORANDUM & ORDER**
24-CV-6993 (MKB)

COMPANY OF CALIFORNIA, and VERIZON
NEW YORK INC.,

Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

I.   Background .................................................................................................................. 3

   a.   The Gowanus Canal superfund site ........................................................................ 4

      i.   The EPA's 2013 record of decision .................................................................. 5

      ii.   Subsequent administrative orders .................................................................... 7

   b.   TDA's alleged involvement .................................................................................. 10

   c.   This action ............................................................................................................ 12

II.   Discussion ................................................................................................................... 17

   a.   Standards of review .............................................................................................. 17

      i.   Rule 12(b)(6) .................................................................................................. 17

      ii.   CERCLA ........................................................................................................ 19

      iii.   CERCLA's *de micromis* exemption ............................................................ 24

   b.   At the motion to dismiss stage, TDA is not entitled to dismissal under a *de micromis* exemption ................................................................................................ 26

      i.   Brooklyn Union has sufficiently pled TDA's potential CERCLA liability as an owner/operator of the Carroll Street Facility ................................................ 31

      ii.   Based on the RD UAO, EPA guidance and case law, the Court finds that the Gowanus Canal Superfund Site includes the Carroll Street Facility and TDA can be held liable as a subsequent owner of a contaminating "facility" ................ 38

      iii.   The Court is not persuaded by TDA's arguments to find the CERCLA "facility" at issue is only that of the Canal and that TDA should be treated as an "arranger" or "generator" under Section 107(a)(3) ................................................................ 45

III.   Conclusion .................................................................................................................. 53

Plaintiff The Brooklyn Union Gas Company, doing business as National Grid NY

("Brooklyn Union"), commenced the above-caption action on October 3, 2024, against several

Defendants, including TDA Industries, Inc. ("TDA"), alleging claims for (1) cost recovery under

the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA");

(2) contribution under CERCLA; (3) contribution under New York Navigation Law § 176(8); (4)

2

strict liability under New York Navigation Law § 181; and also seeks (5) declaratory judgment for recovery of further response costs.  (Compl. ¶¶ 199–235, Docket Entry No. 1.)  Brooklyn Union alleges that Defendants are each partially responsible for contaminating the Gowanus Canal (the "Canal") in Brooklyn, New York, and "asks the Court to hold all parties liable for their equitable share" of cleaning up the Canal.  (*Id.* ¶ 7.)

On July 28, 2025, TDA moved to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing it is entitled to the *de micromis* exemption under CERCLA § 107(o) (42 U.S.C. 9607(o) ("Section 107(o)")); Brooklyn Union opposed the motion.[1]  For the reasons explained below, the Court denies TDA's motion to dismiss.

## I.   Background

The Court assumes the truth of the factual allegations in the Complaint for the purpose of deciding TDA's motion to dismiss.  The Court also considers documents attached to and incorporated by reference in the Complaint and takes judicial notice of relevant state laws, state regulations, case law, and public documents that are not subject to dispute.[2]  *See* Fed. R. Evid.

---

[1]  (Def.'s Notice of Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 251; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), appended to Def.'s Mot., Docket Entry No. 251-1; Cert. of Lee Henig-Elona, Esq. in Supp. of Def.'s Mot. ("Henig-Elona Aff."), appended to Def.'s Mot., Docket Entry No. 251-2; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), appended to Def.'s Mot., Docket Entry No. 251-13; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), appended to Def.'s Mot., Docket Entry No. 251-14; Second Cert. of Lee Henig-Elona, Esq. in Supp. of Def.'s Reply ("Henig-Elona Reply Aff."), appended to Def.'s Mot., Docket Entry No. 251-15.)

[2]  In deciding a Rule 12(b)(6) motion, "the district court is normally required to look only to the allegations on the face of the complaint," but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *see Pearson v. Gesner*, 125 F.4th 400, 406 (2d

201(b) (permitting judicial notice of facts "not subject to reasonable dispute"); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (stating that "relevant matters of public record" are susceptible to judicial notice).

### a.  The Gowanus Canal superfund site

The Gowanus Canal is a "highly polluted" 1.8-mile waterway located in Brooklyn, New York, that has served as a "municipal sewer and [industrial] dumping ground" for more than 150 years.  (Compl. ¶ 1.)  Completed in 1867, the Canal became a central hub for Brooklyn's rapid industrial growth, housing factories, manufactured gas plants ("MGPs"), and shipyards.  (*Id.* ¶¶ 13–15, 17–21.)  Over the decades since the Canal opened, the surrounding operations, along with untreated municipal waste and stormwater runoff, transformed the Canal into what has been described as a "liquid and sediment landfill."  (*Id.* ¶¶ 1, 15–21.)

---

Cir. 2025) (first citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); and then quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016))).  In addition, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *see Hudson Shore Assocs. LP v. New York*, 139 F.4th 99, 104 n.1 (2d Cir. 2025) (quoting *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012)); *Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022) (first citing *Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 226-27 (1959); and then citing *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003)); *see also Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (quoting *Pani*, 152 F.3d at 75); *Owens v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 24-CV-1037, 2025 WL 1795063, at *7 n.4 (N.D.N.Y. June 30, 2025); *McConkey v. Churchill Sch. and Ctr.*, No. 24-CV-6091, 2025 WL 2062195, at *4 n.1 (S.D.N.Y. July 23, 2025) ("Though the [c]ourt may take judicial notice of "documents in the public record at the [m]otion [t]o [d]ismiss stage, it considers them only to establish their existence and legal effect, or to determine what statements they contained not for the truth of the matters asserted." (quoting *2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 206 (S.D.N.Y. 2015))).  The Court may also take judicial notice of "documents retrieved from official government websites." *Warner v. Garland*, No. 20-2197, 2023 WL 3220459, at *1 n.2 (2d Cir. May 3, 2023) (summary order) (quoting *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 299 n.7 (2d Cir. 2022)); *see Zapata v. Stefanski*, No. 24-CV-3785, 2026 WL 292148, at *3 n.1 (E.D.N.Y. Feb. 4, 2026) ("The Court may take judicial notice 'of all documents in the public record,' including 'documents retrieved from official government websites.'" (quoting *Mallett v. Town of Huntington*, 799 F. Supp. 3d 117, 122 (E.D.N.Y. 2025))).

Since 2001, the United States Army Corps of Engineers ("USACE"), the New York State Department of Environmental Conservation ("NYSDEC"), and the United States Environmental Protection Agency (the "EPA") have been investigating the Canal.  (*Id*. ¶ 172.)  Between 2004 and 2006, Brooklyn Union conducted additional investigatory activities at the Canal under the direction of NYSDEC.  (*Id.*)  These preliminary investigations identified contaminants including polycyclic aromatic hydrocarbons ("PAHs"), polychlorinated biphenyls ("PCBs"), pesticides, metals, and volatile organic compounds ("VOCs").  (*Id.* ¶ 173.)  These hazardous substances entered the Canal through direct discharges from outfalls, groundwater seepage, and over-water industrial operations.  (*Id*. ¶ 171.)

In 2010, the EPA officially declared the Canal and its surrounding area a "Superfund site" (the "Gowanus Canal Superfund Site") and listed it on the EPA's National Priorities List ("NPL").  (*Id.* ¶¶ 1, 174.)  NPL sites are areas that the EPA has determined are the "highest priority for cleanup."  (*Id.* ¶ 1.)  "[T]he entire remediation of the Canal is anticipated to cost more than $1 billion."  (*Id.* ¶ 2.)

### i.    The EPA's 2013 record of decision

In 2013, the EPA issued a Record of Decision ("ROD") for the Gowanus Canal Superfund Site selecting the remedy and source controls for the cleanup of the Canal.  (*Id.* ¶ 178; ROD, annexed to Henig-Elona Reply Aff. as Ex. K, Docket Entry No. 251-16.)  *See* EPA, Record of Decision (Sep. 2013), https://semspub.epa.gov/work/02/692106.pdf.  The EPA created the ROD using the results of the EPA's Remedial Investigation and Feasibility Study ("RI/FS").  (Compl. ¶ 24.)  The RI/FS is typically undertaken by one or more potentially responsible party ("PRPs"), but the RI/FS for the Gowanus Canal Superfund Site was atypical as the EPA conducted the study.  (*Id.*)

5

The RI/FS and ROD describe how the "contamination of the Canal has created a many-foot-thick layer of sludge in the upper sediment layers of the Canal bed that lie on top of the native soils" that "requires dredging and off-site disposal of this sludge" to remedy.  (*Id.* ¶ 25.)  Specifically, the ROD determined that "the soft sediments contain hazardous contaminants that must be removed from the Canal . . . because of their threat to human health" and identified the three principal contaminants of concern.  (*Id.* ¶ 26; ROD 44–45.)  First, PCBs, which are associated with shipbuilding operations, electric power generation and component manufacturing, hydraulic fluids used in foundry and metal-cutting operations, and printing activities.  (Compl. ¶¶ 10, 179–80.)  Second, PAHs, which are primarily byproducts of the MGP process, as well as power generation, petroleum storage, refining and distribution operations, tar production and distillation, shipbuilding, and urban runoff.  (*Id*. ¶¶ 10, 18, 179, 181.)  Third, heavy metals, particularly lead and copper, released by incinerators and industrial and municipal operations.  (*Id*. ¶¶ 10, 179, 182.)  The ROD also set the preliminary remediation goals ("PRGs") for the Canal and concluded that the concentrations of these contaminants exceeded the PRGs.  (*Id*. ¶¶ 179–82, 188; ROD 45–50.)  "The sheer volume of the surface and soft sediments is the primary driver of the remediation costs."  (Compl. ¶ 26.)

In addition to the dredging of the contaminated sediments, "the cleanup entails stabilizing or replacing the bulkheads that support the banks of the Canal," many of which have not been replaced since the original structures were built in the nineteenth century.  (*Id.* ¶ 29.)  After the Canal has been dredged, "an engineered cover or cap . . . [must] be laid after the surface and soft sediments are removed" to protect the "native soils" underneath which the "EPA has determined do not require excavation."  (*Id.* ¶ 27.)

This process is summarized in the ROD which outlines the EPA's selected remedy and comprehensive remediation plan for the Gowanus Canal Superfund Site.  (ROD i–v.)  The technical procedure is as follows: (1) dredging and off-site disposal of approximately 700,000 cubic yards of contaminated "soft sediment" accumulated above the native sediments in the mid- and upper reaches of the Canal, (Compl. ¶¶ 10, 25–26, 28, 178); (2) in-situ stabilization in certain areas of the upper and mid-reaches, (*id.* ¶¶ 10, 27–29, 178); (3) armored capping of native sediments in specified areas over the Canal floor to prevent further contamination, (*id.* ¶¶ 10, 27–28, 178); (4) stabilization or replacement of deteriorated bulkheads to prevent structural collapse during dredging activities, (*id.* ¶¶ 29–30, 191–92); and (5) excavation and restoration of certain turning basins, (*id.* ¶ 178).  The EPA estimated the "present-worth cost of the selected remedy" to be approximately $506 million.[3]  (ROD iv.)

### ii.    Subsequent administrative orders

Following the publication of the ROD, the EPA issued numerous administrative orders to implement the processes outlined in the ROD.

On March 20, 2014, the EPA issued a Unilateral Administrative Order for Remedial Design for the Canal (the "RD UAO") to twenty-seven parties, including Brooklyn Union and numerous Defendants.[4]  (Compl. ¶ 187.)  *See In the Matter of the Gowanus Canal Superfund*

---

[3]  The ROD names Brooklyn Union and the City of New York as the "[m]ain PRPs." (ROD 7.)

[4]  The RD UAO names as a PRP: Brooklyn Union Gas Co. d/b/a National Grid New York; TDA; Beam Inc.; Beazer East, Inc.; Brink's Inc.; CBS Corp.; Citigroup, Inc.; Consolidated Edison Co. of New York, Inc.; Dun and Bradstreet Corp.; ExxonMobil Oil Corp.; Hauck Manufacturing Co.; Hess Corp.; Honeywell International Inc.; Kraft Foods Global, Inc.; MCIZ Corp., Fifteen Second Avenue LLC, 36-2nd-J Corp., and 107 Sixth Street LLC; MRC Holdings, Inc.; NL Industries, Inc.; Northville Industries Corp.; Patterson Fuel Oil Co., Inc.; Phillips 66 Company; Puget Sound Commerce Center, Inc.; Rexam Beverage Can Co.; SPX Corp.; Stauffer Management Company, LLC; The Brooklyn Improvement Co.; The Union Oil Company of

*Site*, Administrative Order for Remedial Design, No. CERCLA-02-2014-2001 (EPA Mar. 20, 2014).  The RD UAO mandated the parties "undertake Remedial Design work" ("RD") of the Canal and required them to "investigate, characterize, and plan a remediation for the [Gowanus Canal Superfund] Site."  (Compl. ¶ 187.)  *See In the Matter of the Gowanus Canal Superfund Site*, Administrative Order for Remedial Design 2, No. CERCLA-02-2014-2001.  In addition, the RD UAO holds the parties "jointly and severally liable for [the RD] work."  (Compl. ¶ 187.)  *See In the Matter of the Gowanus Canal Superfund Site*, Administrative Order for Remedial Design 2, No. CERCLA-02-2014-2001.

In response to the RD UAO, Brooklyn Union undertook the work required by the order and coordinated with other PRPs.  (Compl. ¶ 189.)  Approximately twenty PRPs entered into a confidential agreement among themselves to allocate and resolve liability for RD work (the "Agreement").[5]  (*Id.*)  Beazer East, NL Industries, Inc., and The Union Oil Company of California, however, declined to participate in, cooperate with, or support the RD work.  (*Id.* ¶ 190.)

On May 28, 2014, the EPA named the City of New York in a separate Administrative

---

California; and Verizon New York Inc.  *See In the Matter of the Gowanus Canal Superfund Site*, Administrative Order for Remedial Design, No. CERCLA-02-2014-2001 (EPA Mar. 20, 2014).

The PRPs listed in the Bulkhead Unilateral Administrative Order, the Remediation Target Area 1 Unilateral Administrative Order, and the Unilateral Administrative Order for Remediation Target Area 2, as discussed *infra*, are subsets of the PRPs identified in the RD UAO.

[5]  The PRP's that entered into the Agreement are Brooklyn Union; TDA; Brink's Inc.; Citigroup, Inc.; the City of New York; Consolidated Edison Co. of New York, Inc.; Dun and Bradstreet Corp.; ExxonMobil Oil Corp.; Hauck Manufacturing Co.; Hess Corp.; Honeywell International Inc.; Kraft Foods Global, Inc.; MCIZ Corp.; MRC Holdings, Inc.; Northville Industries Corp.; Phillips 66 Company; Puget Sound Commerce Center, Inc.; Rexam Beverage Can Co.; SPX Corp.; Stauffer Management Company, LLC; The Brooklyn Improvement Co.; and Verizon New York Inc.  (Compl. ¶ 189.)

8

Order for Remedial Design (the "NYC UAO"), which required the City's cooperation in the performance of RD, as well as individually cleaning up turning basin #1 and construct combined sewer overflow ("CSO") retention tanks to prevent CSOs from re-contaminating the Canal.  (*Id.* ¶ 188.)  *See In the Matter of the Gowanus Canal Superfund Site*, Administrative Order for Remedial Design, No. CERCLA-02-2014-2019 (EPA May 28, 2014).

On April 11, 2019, the EPA issued the Bulkhead Unilateral Administrative Order (the "BH UAO"), requiring respondents to undertake bulkhead stabilization and replacement as part of a removal action in preparation for the broader remedial action.[6]  (Compl. ¶¶ 192–93.)  *See In the Matter of the Gowanus Canal Superfund Site*, Administrative Order for Removal Action, No. CERCLA-02-2014-2010 (EPA Apr. 11, 2019).  Among the BH UAO PRPs, Beazer East, the MCIZ Corp., 36-2nd J Corp., 15 Second Avenue LLC, 107 Sixth Street LLC, NL Industries, Inc., Phillips 66 Company, and The Union Oil Company of California "flatly refused" to contribute to the BH UAO work.  (Compl. ¶ 194.)  Brooklyn Union further alleges that "no [p]arty has contributed its equitable share to [the bulkhead reconstruction] work."[7]  (*Id.*)

On January 29, 2020, the EPA issued a Remediation Target Area 1 Unilateral

---

[6]  The PRPs named in the BH UAO (the "BH UAO PRPs") are Brooklyn Union, TDA, Beazer East, Inc., Brink's Inc., Citigroup, Inc., the City of New York, Consolidated Edison Co. of New York, Inc., Dun and Bradstreet Corp., ExxonMobil Oil Corp., Hauck Manufacturing Co., Hess Corp., Honeywell International Inc., Kraft Foods Global, Inc., MCIZ Corp., Fifteen Second Avenue LLC, 36-2nd-J Corp., 107 Sixth Street LLC, MRC Holdings, Inc., NL Industries, Inc., Northville Industries Corp., Phillips 66 Company, Puget Sound Commerce Center, Inc., Rexam Beverage Can Co., SPX Corp., Stauffer Management Company, LLC, The Brooklyn Improvement Co., The Union Oil Company of California, and Verizon New York Inc.  (*Id.* ¶¶ 192–94.)

All BH UAO PRPs, other than the ExxonMobil Oil Corp. and Hauck Manufacturing Co. (both of whom are contributing responsible parties, (*see* Compl. ¶ 4), are named as Defendants in this action.  *See infra* Section I.c.

[7]  The EPA later issued amendments to the BH UAO on March 3, 2020, September 18, 2020, and June 8, 2023.  (Compl. ¶ 193.)

9

Administrative Order (the "RTA1 UAO") to six entities: Brooklyn Union; the City of New York; Consolidated Edison Co. of New York; Hess Corporation; Honeywell International, Inc.; and The Brooklyn Improvement Company (the "RTA1 UAO PRPs").  (*Id.* ¶ 195.)  *See In the Matter of the Gowanus Canal Superfund Site*, Administrative Order for Remedial Action ¶ 6(k), No. CERCLA-02-2020-2023 (EPA Jan. 28, 2020).  The RTA1 UAO directed these parties to implement the dredging and capping design for the First Street Turning Basin and Remediation Target Area 1 ("RTA1"), thus initiating the first phase of the formal remedial action.  (Compl. ¶ 195.)

On June 28, 2024, the EPA issued a subsequent Unilateral Administrative Order for Remediation Target Area 2 ("RTA2 UAO") to the same six respondents.  (*Id.* ¶ 197.)  *See In the Matter of the Gowanus Canal Superfund Site*, Amendment to Administrative Order for Remedial Action, No. CERCLA-02-2020-2003 (EPA June 28, 2024).  Other PRPs were excluded from these two orders "so long as they are acting in good faith with respect to the requirements and agreements reached under prior orders and negotiating a potential settlement in good faith." (Compl. ¶ 196 (citation omitted).)

### b.  TDA's alleged involvement

TDA's predecessor, Northeastern Plastics, Inc. ("Northeastern"), owned and operated a manufacturing facility at 420 Carroll Street from 1963 to 1999 (the "Carroll Street Facility"). (Compl. ¶ 156.)  Northeastern used the Carroll Street Facility to manufacture "plastic boxes, cases, slide rules, trays, and housewares and extruded polyvinyl chloride [ ] insulated conductor products (jumper cables and non[-]UL Listed cord sets) on-site."  (*Id.* ¶ 156(a).)  Brooklyn Union alleges that the Carroll Street Facility included a machinery repair shop and a gasoline underground storage tank.  (*Id.*)

First, Brooklyn Union alleges that the Carroll Street Facility generated contaminated

wastewater "from [] plastic molding and forming processes," and that this wastewater "contained petroleum, VOCs, [semi-volatile organic compounds ('SVOCs')], and metals." (*Id.* ¶ 156(b).) Second, Brooklyn Union contends that hazardous substances were released to the Canal through "direct discharge via stormwater and surface runoff and connections to the sewer system and private outfalls," as well as through "seepage." (*Id.* ¶ 156(c).) Third, Brooklyn Union asserts that the sewer system included "outfalls and overflow points to the Canal," and that the Carroll Street Facility had "a floor drain that discharged to the City sewers and two floor drains that discharged directly to subsurface soils at the [Canal]." (*Id.*) Brooklyn Union cites to the 2005 Subsurface Investigation Report (the "SIR")[8] to support of its allegations, alleging that the SIR "documented PAHs, copper, and lead in site soils and groundwater." (*Id.*)

The EPA formally notified TDA of its potential liability through a general notice letter ("GNL") issued on October 5, 2012. (Compl. ¶ 185.) The RD UAO subsequently listed TDA as one of the respondents, requiring TDA and other PRPs to "investigate, characterize, and plan a remediation for the [Gowanus Canal Superfund] Site." (*Id.* ¶ 187.) Under the RD UAO, TDA and the other PRPs are "jointly and severally liable for this work." (*Id.*) Subsequently, TDA and certain other PRPs entered into a confidential agreement, the "Agreement," among themselves to

---

[8] TDA requests that the Court take judicial notice of the SIR, which is specifically referenced in the Complaint at ¶ 156(c), in an attempt to dispute the allegations in the Complaint. (Def.'s Mem. 6 n.2; *see* SIR, annexed to Henig-Elona Aff. as Ex. B, Docket Entry No. 251-4.) While the Court can consider documents incorporated by reference in the Complaint, *see supra* footnote 2, it is inappropriate at the motion to dismiss stage for the Court to consider the validity of Brooklyn Union's allegations. *See Greene v. City of New York*, 773 F. Supp. 3d 94, 106 ("At [the motion to dismiss] stage, the task 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" (quoting *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011))). Thus, the Court will judicially notice the SIR for the purposes of this Memorandum and Order but will not rely upon its contents to make any factual determination.

11

allocate and resolve liability for the remedial design work and to facilitate completion of the required design activities.[9]  (*Id*. ¶ 189.)  The EPA also named TDA in the BH UAO and ordered TDA to perform bulkhead stabilization and replacement work.  (*Id*. ¶ 192.)  Brooklyn Union alleges that TDA has not "contributed its equitable share to this work."  (*Id*. ¶ 194.)

    **c.    This action**

Brooklyn Union commenced the above-caption action on October 3, 2024, against Defendants TDA, Consolidated Edison Company of New York, Inc., The City of New York, The United States of America, The United States Department of Defense, The United States Department of the Navy, The United States Department of the Army, The United States Coast Guard, The Federal Maritime Commission, The United States Postal Service, The United States General Services Administration,[10] Astoria Generating Company, L.P., Ballantyne Legacy Holdings, LLC, Bayside Fuel Oil Corporation, Beazer East, Inc., The Brink's Company, Brooklyn Improvement Company, Dun and Bradstreet Corp., Hess Corp., The Kraft Heinz Company,[11] MCIZ Corp., 36-2nd J Corp., 15 Second Avenue LLC, 107 Sixth Street LLC, Metropolitan Transportation Authority, MRC Holdings, Inc., New York City Economic Development Corp., New York City Industrial Development Agency, New York City Transit

---

[9]  *See supra* footnote 5.

[10]  The Court refers to Defendants The United States of America, The United States Department of Defense, The United States Department of the Navy, The United States Department of the Army, The United States Coast Guard, The Federal Maritime Commission, The United States Postal Service, and The United States General Services Administration collectively as the "Federal Government Defendants."

[11]  On October 13, 2025, Plaintiff, Brooklyn Union, and Defendant and Cross-Plaintiff NL Industries, Inc., *see infra* footnote 12, filed a stipulation of dismissal dismissing The Kraft Heinz Company and Stauffer Management Company.  (Stip. of Dismissal, Docket Entry No. 265.)  The Court approved the dismissal on October 14, 2025.  (Order dismissing parties dated Oct. 14, 2025.)

Authority, NL Industries, Inc.,[12] Northville Industries Corp.,[13] Phillips 66 Company,[14] Power

Authority of the State of New York, Puget Sound Commerce Center, Inc., Rexam Beverage Can

Company, SPX Technologies, Inc.,[15] Stauffer Management Company,[16] Texaco, Inc., Union Oil

---

[12] On December 2, 2024, NL Industries, Inc. filed its answer, a counterclaim against Brooklyn Union, and cross-claims against all other Defendants.  (NL Industries' Answer, Counterclaim, and Crossclaims, Docket Entry No. 95.)  NL Industries alleged that to the extent it "is held responsible for the alleged injury and harm, the injury was the proximate result of the acts and/or omissions of the Plaintiff and [other D]efendants" and thus NL Industries, Inc. "is entitled to contribution from Plaintiff and [other D]efendants for their proportionate share of the response costs incurred and to be incurred in connection with the work performed at the [Gowanus] Canal."  (*Id.* at 19.)

[13] On September 22, 2025, Plaintiff Brooklyn Union and Defendant and Cross-Plaintiff NL Industries, Inc., filed a stipulation of dismissal dismissing Northville Industries Corp.  (Stip. of Dismissal, Docket Entry No. 263.)  The Court approved the dismissal on September 23, 2025.  (Order dismissing parties dated Sep. 23, 2025.)

[14] On December 2, 2024, Phillips 66 Company ("Phillips") filed counterclaims against Brooklyn Union.  Phillips alleges Brooklyn Union breached the Agreement by filing this case.  *See supra* Section I.A.ii and footnote 5.  (Phillips' Answer and Counterclaims, Phillips' Counterclaims, ¶¶ 31–62, Docket Entry No. 91; Agreement, annexed to Phillips' Answer and Counterclaims as Ex. 1, Docket Entry No. 91-1.)  In support, Phillips argues that Brooklyn Union's claims are barred by the Agreement and seeks to introduce the Agreement, including its allocated percentage for costs related to cleaning up the canal, as a defense to Brooklyn Union's claims.  (Phillips' Answer and Counterclaims, Affirmative Defenses, ¶ 5.)  Phillips counterclaims against Brooklyn Union for (1) contribution under CERCLA; (2) contribution under New York Navigation Law; and (3) contribution under New York common law and the New York Civil Practice Law and Rules.  (Phillips' Answer and Counterclaims, Phillips' Counterclaims, ¶¶ 63–130.)  On June 11, 2025, Brooklyn Union moved for summary judgment on Phillips' counterclaims, Phillips opposed and cross-moved for summary judgment on its counterclaims.  (*See* Pl.'s Mot. for Summ. J., Docket Entry No. 237; Phillips' Cross-Mot. for Summ. J., Docket Entry No. 240.)  These motions are currently pending before the Court.

[15] On December 11, 2024, Brooklyn Union filed a stipulation of dismissal dismissing SPX Technologies, Inc., (Stip. of Dismissal, Docket Entry No. 124), and the Court approved the dismissal, (Order dismissing parties dated Dec. 11, 2024).  On December 19, 2024, Cross-Plaintiff, NL Industries, Inc., filed a stipulation of dismissal dismissing SPX Technologies, Inc., as cross-defendant.  (Stip. of Dismissal, Docket Entry No. 140.)  The Court approved the dismissal on December 23, 2024.  (Order dismissing parties dated Dec. 23, 2024.)

[16] *See supra* footnote 11.

13

Company of California, and Verizon New York Inc.  (Compl. ¶¶ 38–69.)

Brooklyn Union alleges claims for (1) cost recovery under CERCLA against each Defendant; (2) contribution under CERCLA against Defendants TDA, The Brink's Company, Brooklyn Improvement Company, the City of New York, Consolidated Edison Company of New York, Inc., Dun and Bradstreet Corp., Hess Corp., MCIZ Corp., 36-2nd J Corp., 15 Second Avenue LLC, 107 Sixth Street LLC, MRC Holdings, Inc., Phillips, Puget Sound Commerce Center, Inc., Rexam Beverage Can Company, and Verizon New York, Inc.; (3) contribution under New York Navigation Law § 176(8) against all Defendants except the Federal Government Defendants; (4) strict liability under New York Navigation Law § 181 against all Defendants except the Federal Government Defendants; and also seeks (5) declaratory judgment for recovery of further response costs against all Defendants.  (*Id.* ¶¶ 199–235.)

Brooklyn Union alleges it "alone is spearheading efforts to investigate and clean up contamination at the [Canal]" and is seeking to hold other PRPs responsible for paying their "equitable share of the [cleanup] costs."[17]  Brooklyn Union "does not dispute that, through the discharge of wastewater and likely through leaks and spills, its historical operations contributed to the PAH contamination in the Canal."  (*Id.* ¶ 19.)  However, "Brooklyn Union asks the Court to hold all parties liable for their equitable share so that the burden of funding the cleanup may be divided among all PRPs with each Defendant paying a just and reasonable portion of the total cost."  (*Id.* ¶ 7.)  Brooklyn Union brings this action under CERCLA § 107(a) (42 U.S.C. §

---

[17]  (Compl. ¶¶ 4, 22; *see id.* ¶ 177 ("Brooklyn Union undertook the work that was required by the RI/FS AOC."); ¶ 211 ("Brooklyn Union has incurred tens of millions of dollars in necessary costs of response pursuant to the [unilateral administrative orders ("UAOs")] as well as voluntary costs incurred beyond the scope of the RD UAO, Bulkhead UAO, RTA1 UAO, and RTA2 UAO.  Brooklyn Union will continue to incur additional response costs in the future.").)

9607(a) ("Section 107")) for cost recovery, (*id.* ¶¶ 199–211), CERCLA § 113(f)(3)(B) (42 U.S.C. § 9613(f) ("Section 113")) for contribution action, (*id.* ¶¶ 212–19), New York Navigation Law § 176(8) for contribution, (*id.* ¶¶ 220–24), and New York Navigation Law § 181 for strict liability, (*id.* ¶¶ 225–29).

Brooklyn Union contends that "[e]ach of the [forty] [D]efendants in this action is a [PRP] for the [Gowanus Canal Superfund Site]," as determined by the EPA's issuance of GNLs and UAOs, and as such are "jointly and severally liable for cleanup costs at the Canal." (*Id.* ¶¶ 3, 187.) In particular, Brooklyn Union contends that "all of these parties contributed to the pollution in the Canal through three path ways that allowed hazardous substances to release into the Canal: [(]1) direct discharge via stormwater runoff, private outfalls, and public outfalls; [(]2) seepage; and [(]3) on/over water operations." (*Id.* ¶ 171; *see id.* ¶ 209 ("The release of hazardous substances at and from the Defendants' facilities has caused the incurrence of response costs.").)

The PRPs identified in the RD UAO together with the NYC UAO represent the full universe of PRPs the EPA identified through UAOs for the Canal.[18] Each of the PRPs in the

---

[18]  To identify the PRPs, first, the "EPA issued questionnaires to the parties it recognized had a historical presence at the Canal, pursuant to its authority under CERCLA § 104(e)." (Compl. ¶ 183.) Using the responses, the EPA "develop[ed] a nexus between each individual party and the hazardous substances that have been released to the Canal." (*Id.*) Next, the "EPA sent general notice letters to the PRPs it believed were liable for response costs at the [Canal]." (*Id.* ¶ 184.) EPA sent a GNL to each individual PRP notifying the PRP of its potential liability, stating: "EPA has evaluated information obtained in connection with the Site. . . . By this letter we are notifying you that we have reason to believe that your company . . . is a potentially responsible party . . . with respect to the Site." (*Id.*)

The EPA sent GNLs to: Defendants The Brink's Company and Beazer East, Inc. on December 17, 2009; Defendants Consolidated Edison Co. of New York, Inc., The City of New York, The United States Department of the Navy, Hess Corp., The Kraft Heinz Company, Stauffer Management Company, MCIZ Corp., Fifteen Second Avenue LLC, 36-2nd-J Corp., 107 Sixth Street LLC, Bayside Fuel Oil Corporation, Phillips, MRC Holdings, Inc., NL Industries,

15

universe are named as a Defendant in this action with the following exceptions — (1) Among the

PRPs identified in the RD UAO and BH UAO, the following are not named by Brooklyn Union

as Defendants: Beam, Inc.; CBS Corp.; and Patterson Fuel Oil Co., Inc., (*compare* Compl., *with*

RD UAO ¶ 6(o)); (2) Citigroup, Inc. resolved their liability for the RD UAO pursuant to a

confidential agreement with Brooklyn Union, (Compl. ¶ 189); and (3) Brooklyn Union has

reached settlements with ExxonMobil Oil Corporation, Hauck Manufacturing Co., and

Honeywell International Inc. (the "Contributing Responsible Parties" or "CRPs"), which include

financial commitments toward funding the cleanup, (i*d.* ¶ 4).  The remaining PRPs "have refused

to pay anything."  (*Id.* ¶¶ 5, 190, 194.)

"In addition, Brooklyn Union [ ] discovered several entities that were not included in

[the] EPA's original review that are also liable based on their operations that have released

hazardous substances to the Canal."  (*Id.* ¶ 3.)  Brooklyn Union has named Astoria Generating

Company, L.P.; Ballantyne Legacy Holdings, LLC; Bayside Fuel Oil Corporation ("Bayside

Fuel") and Texaco, Inc. as Defendants, although these entities are not identified as PRPs in the

---

Inc., the Union Oil Company of California (c/o Chevron U.S.A. Inc.), Verizon New York Inc., SPX Technologies, Inc., The United States Postal Service, The United States General Services Administration, Dun and Bradstreet, Corp., Rexam Beverage Can Company, Northville Industries Corp., and The Federal Maritime Commission on September 21, 2010; *TDA on October 5, 2012*; and Puget Sound Commerce Center, Inc. and Brooklyn Improvement Company, on September 30, 2013.  (*Id.* ¶ 185.)

After receipt of a GNL, Brooklyn Union "agreed to continue to cooperate with [the] EPA on the cleanup of the [Canal]."  (*Id.* ¶ 186.)  On April 29, 2010, Brooklyn Union entered into an Administrative Order and Settlement Agreement with the EPA (Index Number CERCLA-12-2010-2009) "pursuant to which Brooklyn Union conducted response actions in support of [the] EPA's performance of a RI/FS of the Site."  (*Id.* ¶ 175.)  Subsequently, on January 23, 2014, Brooklyn Union entered into an Amendment to the Administrative Order and Settlement Agreement with the EPA "pursuant to which Brooklyn Union agreed to conduct further sampling, analysis, and other pre-design tasks necessary to begin the remedial design phase of remediation at the [Canal]."  (*Id.* ¶ 186.)

RD UAO or any subsequent administrative order.  (*Compare* Compl., *with* RD UAO ¶ 6(o); Compl. ¶¶ 117, 118, 157.)

Brooklyn Union alleges that the EPA issued a GNL to Bayside Fuel, on September 21, 2010, (Compl. ¶ 185), and while the RD UAO does not list Bayside Fuel as a respondent, on July 9, 2015, the entity signed an Administrative Settlement Agreement and Order on Consent for a Removal Action with the EPA concerning implementation of bulkhead upgrades at Bayside Fuel's property and coordination with other PRPs regarding the remedial design.  (*Id.* ¶ 191; *see* RD UAO 31.)  "Despite this requirement, Bayside Fuel has not performed or otherwise contributed to the RD work."  (Compl. ¶ 191.)

Brooklyn Union proposes that each Defendant "bear financial responsibility for the cleanup consistent with its contributions to the contaminants in the Canal."  (*Id.* ¶ 9.)  It proposes each share "be calculated by understanding [(]1) the Defendant's former operations along the Canal; [(]2) the hazardous substances used during those operations; [(]3) the waste streams generated by the Defendant's operations; [(]4) the pathways for those waste streams to reach the Canal; and [(]5) the level of participation in the remedial action."  (*Id.*)

## II. Discussion

### a. Standards of review

#### i. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) ("[The Second Circuit] review[s] *de novo* a district court's dismissal of a complaint pursuant to

17

Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002))).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *New Yorkers for Religious Liberty, Inc. v. New York*, 125 F.4th 319, 327 (2d Cir. 2024) (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63) (same); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678) (same); *see also Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 544 (2d Cir. 2024) ("[T]he plaintiff's allegations must enable the court to reasonably infer that the defendant is liable for the alleged misconduct"), *cert. denied sub nom.*, *NBA v. Salazar*, 146 S. Ct. 880 (2025); *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024) ("[S]urviv[ing] a motion to dismiss . . . requires 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678)).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)).

18

### ii. CERCLA

CERCLA is a comprehensive federal statute with two primary purposes: "(1) to encourage the timely cleanup of hazardous waste sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." *Price Trucking Corp. v. Norampac Indus.*, 748 F.3d 75, 79 (2d Cir. 2014) (quoting *W.R. Grace & Co.–Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 88 (2d Cir. 2009)). The statute is designed to "promote the 'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts [a]re born by those responsible for the contamination." *Burlington N. & Sante Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009) (quoting *Consol. Edison Co. of N.Y., Inc. v. UGI Utils, Inc.*, 423 F.3d 90, 94 (2d Cir. 2005)); *see also United States v. Bestfoods*, 524 U.S. 51, 55 (1998) ("In 1980, CERCLA was enacted in response to the serious environmental and health risks posed by industrial pollution . . . [and] is a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." (citations omitted)); *MPM Silicones, LLC v. Union Carbide Corp.*, 966 F.3d 200, 228 (2d Cir. 2020), *as amended* (Aug. 13, 2020) (noting that "CERCLA's manifest purpose [is] to 'encourag[e] the timely cleanup of hazardous waste sites' by private parties by 'placing the cost of that cleanup on those responsible for creating or maintaining the hazardous condition'" (second alteration in original) (quoting *Consol. Edison Co. of N.Y., Inc.*, 423 F.3d at 94)); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120 (2d Cir. 2010) ("CERCLA empowers the federal government and the states to initiate comprehensive cleanups and to seek recovery of expenses associated with those cleanups."); *Next Millennium Realty LLC v. Util. Mfg. Co.*, No. 22-CV-2529, 2025 WL 2689701, at *4 (E.D.N.Y. Sep. 20, 2025) ("CERCLA was enacted to ensure that those responsible for any damage, environmental harm, or injury from hazardous substances released into the environment bear the costs of their actions." (citing *Niagara*

19

*Mohawk Power Corp.*, 596 F.3d at 120)).  The statute directs the EPA to compile a prioritized list of contaminated sites, commonly referred to as "Superfund sites," on the NPL and "empowers the federal government and the states to initiate comprehensive cleanups and to seek recovery on expenses associated with those cleanups."  42 U.S.C. § 9605; *Niagara Mohawk Power Corp.*, 596 F.3d at 120.

"Under CERCLA, responsible parties are strictly liable for the costs of the cleanup." *Revitalizing Auto Cmtys. Env't Response Trust v. Nat'l Grid USA* (*RACER*), 92 F.4th 415, 439 (2d Cir. 2024).  The statute "imposes strict liability on facility owners and operators, on persons who arranged for the disposal or treatment of hazardous waste at the relevant site, and on persons who transported hazardous waste to the site, often collectively referred to as [PRPs]." *Asarco LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).  "CERCLA imposes strict liability for environmental contamination upon four broad classes of PRPs:

> (1) the owner and operator of a vessel or a facility,
> (2) any person[19] who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance . . . .

---

[19]  For purposes of the statute, a "person" is defined as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body."  42 U.S.C. § 9601(21).

20

*Burlington N. & Santa Fe Ry. Co.*, 556 U.S. at 608–09 (quoting 42 U.S.C. § 9607(a)); *see MPM Silicones*, 966 F.3d at 214 n.16 (Section 107(a) enumerates four classes of PRPs: "(1) owners of facilities with hazardous substances; (2) former owners of facilities with hazardous substances; (3) generators of hazardous substances; and (4) transporters of hazardous substances." (quoting *Schaefer v. Town of Victor*, 457 F.3d 188, 195 (2d Cir. 2006) (citing 42 U.S.C. § 9607(a)(1)-(4)))); *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992) ("CERCLA establishes four classes of responsible parties liable for the costs of responding to releases or threatened releases of hazardous substances . . . [which] include past and present owners or operators of facilities, transporters of hazardous substances, and those . . . who generate or arrange for the disposal or treatment of hazardous substances." (citing 42 U.S.C. § 9607(a))).  While "'CERCLA does not specifically provide that a successor corporation may be liable for response costs,' [the Second Circuit] has held that CERCLA encompasses such successor liability."  *Goodwin*, 756 F.3d at 198–99 (quoting *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 206 (2d Cir. 2006)); *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 682, 693 n.4 (2d Cir. 2003) (Leval, J., concurring) ("[The Second Circuit has stated] that courts 'have read CERCLA as making successor corporations liable, in certain circumstances, for their predecessors' acts.'" (quoting *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 518 (2d Cir. 1996))).

"CERCLA does provide property owners an avenue of reprieve; it allows them to seek reimbursement of their cleanup costs from others in the chain of title or from certain polluters — the so-called [PRPs]" with remedies "available through three separate provisions, namely §§ 107, 113(f)(1), and 113(f)(3)(B)."  *Niagara Mohawk Power Corp.*, 596 F.3d at 120; *see Key Tronic Corp. v. United States*, 511 U.S. 809, 814 n.13 (1994) ("CERCLA is designed to encourage private parties to assume the financial responsibility of cleanup by allowing them to

21

seek recovery from others." (y citation omitted)); *MPM Silicones*, 966 F.3d at 214 ("Among other measures, CERCLA 'authoriz[es] private parties to pursue contribution or indemnification from potentially responsible parties ['PRPs'] for expenses incurred responding to environmental threats.'" (first alteration in original) (quoting *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 326 (2d Cir. 2000))).

CERCLA also "authorize[s] parties in different procedural positions to recover costs incurred in cleaning up contamination: '(1) section 107(a), which permits the general recovery of cleanup and prevention costs; (2) section 113(f)(1), which creates a contribution right for parties liable or potentially liable under CERCLA; and (3) section 113(f)(3)(B), which creates a contribution right for parties that have resolved their liability by settlement.'" *W.R. Grace & Co. –Conn.*, 559 F.3d at 89 (quoting *Consol. Edison Co. of N.Y., Inc.*, 423 F.3d at 94). The statutory framework authorizes parties "to recoup money spent to clean up and prevent future pollution at contaminated sites or to reimburse others for cleanup and prevention at contaminated sites." *Consol. Edison Co. of N.Y., Inc.*, 423 F.3d at 94. "Where the environmental harm is indivisible, multiple responsible persons will be jointly and severally liable for cleanup costs." *Bedford Affs. v. Sills*, 156 F.3d 416, 423 (2d Cir. 1998) (citing *B.F. Goodrich Co.*, 958 F.2d at 1198); *see Niagara Mohawk Power Corp.*, 596 F.3d at 121 ("Section 107 allows for complete cost recovery under a joint and several liability scheme.").

Section 107 "authorizes the United States, a state, or 'any other person,'" *Niagara Mohawk Power Corp.*, 596 F.3d at 120–21 (citing 42 U.S.C. § 9607(a)(4)), "to recover 'all costs of [a] removal or remedial action' from 'any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,'" *Territory of Guam v. United States*, 593 U.S. 310, 314 (2021) (alteration in original) (quoting 42

22

U.S.C. § 9607(a)(4)); *see also Schaefer*, 457 F.3d at 195 (Section 107(a) "provides 'a cause of action for private parties to seek recovery of cleanup costs' because PRPs are liable for 'any other necessary costs of response incurred by *any other person* consistent with the national contingency plan.'" (first quoting *Key Tronic Corp.*, 511 U.S. at 814; and then quoting 42 U.S.C. § 9607(a)(4)(B))).

"Section 113(f)(1) provides PRPs who have been sued under section 107 with a right of contribution from other PRPs, including the plaintiff," and "Section 113(f)(3)(B) also provides a right of contribution to PRPs that have settled their CERCLA liability with a state or the United States through either an administrative or judicially approved settlement." *Niagara Mohawk Power Corp.*, 596 F.3d at 121 (first citing *United States v. Atl. Rsch. Corp.,* 551 U.S. 128, 135–36 (2007); then citing 42 U.S.C. § 9613(f)(3)(B)); *see also Territory of Guam*, 593 U.S. at 315 (noting that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement" (alteration in original) (quoting 42 U.S.C. § 9613(f)(2))); *Consolidated Edison Co. of N.Y., Inc.*, 423 F.3d at 95 ("Section 113(f)(1) expressly creates a contribution right for parties liable or potentially liable under CERCLA" and "section 113(f)(3)(B) creates contribution rights for settling parties.").[20]  Therefore, "[w]hile [Section] 107(a) cost recovery actions and [Section] 113(f) contribution actions offer 'complementary yet distinct' remedies, there is overlap between them." *Asarco LLC v. Atlantic Richfield Co.*, 866

---

[20]  The Second Circuit has "noted that while § 107(a) permits recovery of all remedial costs, it does not preclude defendant PRPs from asserting counterclaims (or cross-claims) for contribution under § 113(f)(1), effectively converting the § 107(a) action into an apportionment of liability among jointly *and* severally liable parties." *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 121 n.8 (2d Cir. 2010) (citations omitted).

F.3d 1108, 1116 (9th Cir. 2017) (quoting *Atl. Rsch. Corp.*, 551 U.S. at 139); *see Next Millennium Realty LLC*, 2025 WL 2689701, at *5–6 (explaining in detail the interplay between Sections 107(a) and 113(f)).

### iii.   CERCLA's *de micromis* exemption

Section 107(o) of CERLA provides a *de micromis* exemption to liability for arrangers and transporters of hazardous substances.  42 U.S.C. § 9607(o); *see* 42 U.S.C. § 9607(a)(3) (outlining liability for arrangers or generators); 42 U.S.C. § 9607(a)(4) (outlining liability for transporters); *see also PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 168 (4th Cir. 2013) (Under CERCLA, "Section [1]07(a) establishes strict liability . . . subject only to a few narrow defenses and exemptions," including the *de micromis* exemption under Section 107(o) (citations omitted)); *Emhart Indus., Inc. v. New England Container Co.*, Nos. 06-218, 11-023, 2025 WL 2589311, at *11 n.19 (D.R.I. Sep. 8, 2025) ("CERCLA contains a 'de micromis' exemption under which certain entities are not liable if the materials containing hazardous substances for which they arranged for treatment or disposal amount to [less than the statutorily prescribed amount].'" (quoting 2 U.S.C. § 9607(o))).  "First, an arranger (or generator) is a person or entity who by contract or agreement arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances." *Metro Container Grp. v. AC&T Co.*, 450 F. Supp. 3d 583, 592 (E.D. Pa. 2020) (citing 42 U.S.C. § 9607(a)(3)); *see also Niagara Mohawk Power Corp.*, 596 F.3d at 136 n.26 (quoting same); *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043 (2d Cir. 1985) (quoting same); *Seggos v. Datre*, No. 17-CV-2684, 2024 WL 4120401, at *3 (E.D.N.Y. July 18, 2024) (quoting same). "Second, a transporter is any person who accepts or accepted any hazardous substances for

24

transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance." *Metro Container Grp.*, 450 F. Supp. 3d at 592 (citing 42 U.S.C. § 9607(a)(4)); *see also Freeman v. Glaxo Wellcome, Inc.*, 189 F.3d 160, 163 (2d Cir. 1999) (quoting same); *Betkoski*, 99 F.3d at 520 (quoting same); *Seggos*, 2024 WL 4120401, at *3 (quoting same).

Pursuant to Section 107(o)(1), those persons who can demonstrate that "the total amount of the material containing hazardous substances that the person arranged for disposal or treatment of, arranged with a transporter for transport for disposal or treatment of, or accepted for transport for disposal or treatment, at the facility was less than 110 gallons of liquid materials or less than 200 pounds of solid materials" are exempt from liability.  42 U.S.C. § 9607(o)(1); *see Metro Container Grp.*, 450 F. Supp. 3d at 602 n.14 (quoting *id.*); *Hobart Corp. v. Dayton Power & Light Co.* (*Hobart II*), No. 13-CV-115, 2019 WL 4621034, at *13 (S.D. Ohio Sep. 23, 2019) (quoting same).  "Section 107(o) is the codified version of the *de micromis* exemption . . . meant to protect those entities who may have contributed miniscule amounts (less than 110 gallons or 200 pounds) of material containing hazardous waste to a site."  *68th St. Site Work Grp. v. Airgas, Inc.*, No. 20-3385, 2021 WL 4255030, at *24 (D. Md. Sep. 16, 2021); *see In re Voluntary Purchasing Grps. Inc. Litig.*, No. 39-CV-2477, 2002 WL 31156535, at *8 (N.D. Tex. Sep. 26, 2002) ("This exemption . . . was created by Congress to provide a means by which very small companies and organizations which contributed only 'miniscule' amounts of waste could escape from the joint and several liability imposed on them by CERCLA.  These parties have included such organizations as the Elks Club, the Little League, a pizza parlor, and the Salvation Army." (internal citation omitted)).

25

Pursuant to Section 107(o)(4), "[i]n the case of a contribution action, with respect to response costs at a facility on the [NPL], brought by a party, other than a Federal, State, or local government, under this chapter, the burden of proof shall be on the party bringing the action to demonstrate that the conditions described in paragraph (1) . . . of this subsection are not met." 42 U.S.C. § 9607(o)(4); *see City of Bangor v. Citizens Comm'ns Co.*, 437 F. Supp. 2d 180, 215 n.13 (D. Me. 2006) (quoting *id.*)); *see also Hobart Corp. v. Dayton Power & Light Co.* (*Hobart I*), No. 13-CV-115, 2017 WL 5956911, at *15 (S.D. Ohio Nov. 30, 2017) (holding that as the case was a contribution action, "the burden of proof is on [the p]laintiffs to show that [the *de micromis*] exemption does not apply").

### b. At the motion to dismiss stage, TDA is not entitled to dismissal under a *de micromis* exemption

TDA argues it "is entitled to the *de micromis* liability exemption."[21] (Def.'s Mem. 5.) In support, TDA contends that "Brooklyn Union has the burden of pleading that TDA is <u>not</u> entitled to the exemption" under Section 107(o)(4) and "fails to do so." (*Id.* at 5–6.) TDA claims that

---

[21] The Court notes that the *de micromis* exemption on its face appears to apply only to the causes of action in the Complaint brought under CERCLA — *i.e.*, count one (CERCLA § 107), count two (CERCLA § 113(f)), and potentially count five (pursuant to the Declaratory Judgment Act). TDA has not explained how the *de micromis* exemption under CERCLA would apply to the New York state claims alleged in the Complaint — count three (New York Navigation Law § 176(8)) and count four (New York Navigation Law § 181). The Court therefore construes TDA's motion to dismiss as a partial motion to dismiss the CERLA claims and will only address counts one, two and five of the Complaint. *See Ochoa v. N.Y.C. Dep't of Ed.*, No. 20-CV-9014, 2021 WL 5450343, at *1 n.1 (S.D.N.Y. Nov. 22, 2021) (interpreting the defendants' motion to dismiss as a partial motion to dismiss where the defendants' memoranda and supporting papers did not address all of the plaintiff's claims); *BaRoss v. Greenlawn Volunteer Fire Dep't, Inc.*, No. 16-CV-4805, 2017 WL 2124424, at *5 (E.D.N.Y. May 16, 2017) (construing the defendants' motion to dismiss as a partial motion to dismiss where the defendant's briefing did not address "every one of the [p]laintiff's claims"); *Torres v. Postmaster Gen.*, No. 05-CV-1692, 2006 WL 1525981, at *1–2 (D. Conn. May 26, 2006) (treating the defendants' motion to dismiss as a partial motion to dismiss where the defendants argued the plaintiff "failed to state a claim upon which relief may be granted pursuant to Title VII" while the plaintiff's amended complaint "assert[ed] other claims for relief").

26

while this action is brought under both CERLCA Section 107 and 113, "[o]nce a plaintiff asserts a cost recovery claim and defendants assert counterclaims seeking contribution, the entire case becomes a contribution action subject to the [c]ourt's allocation among all of the parties based on the equities." (Def.'s Reply 10 (citing *Atl. Rsch. Corp.*, 551 U.S. at 140).) TDA argues first, under Section 107(a), TDA is a "generator" or "arranger" entitled to the *de micromis* exemption, "not an owner or operator of the Gowanus Canal Superfund Site." (Def.'s Mem. 12; Def.'s Reply 2, 6.) Second, TDA contends that "Brooklyn Union describes a generic plastics operation 'in general' and 'upon information and belief' — without any reference to TDA's *actual* operation" and the "Complaint does not allege that TDA's actual operations resulted in discharges of hazardous substances in a quantity sufficient to be ineligible for the exemption."[22] Third, TDA argues that because Brooklyn Union "has failed to meet its burden to allege that TDA is not entitled to a *de micromis* exemption," it is entitled to attorneys' fees. (Def.'s Mem. 9 (citing 42 U.S.C. § 9607(o)(7)).)

Brooklyn Union argues first that, in the Complaint, it "sufficiency alleges . . . that TDA, as an 'owner' and 'operator' of a facility, is expressly not eligible for the *de micromis* exemption to liability under [CERCLA]." (Pl.'s Opp'n 1; *see id.* at 5.) Second, Brooklyn Union contends that "even if the allegations of the Complaint were somehow not taken as true, as they must be for TDA's motion, [the motion] still fails" because even if TDA was deemed an "arranger" or "transporter," the "Complaint still alleges sufficient facts for the Court to reasonably conclude

---

[22] (Def.'s Mem. 6 (citing Compl. ¶¶ 156(b), (c)); *see id.* at 5 ("TDA is entitled to the exemption because hazardous substance discharged to the Gowanus Canal, if any, were in quantities *below* the limit set forth in the *de micromis* exemption"); *id.* at 9 ("Brooklyn Union did *not* allege that the purported runoff and seepage exceeded 110 gallons of liquid containing hazardous substances."); *id.* at 12 ("Brooklyn Union has not alleged that TDA contributed more than 110 gallons of liquid waste to the Gowanus Canal."); *see also* Def.'s Reply 9–10.)

27

that TDA would not qualify for the exemption because TDA discharged hazardous substances to the Gowanus Canal in excess of the exemption's threshold amount." (*Id.* at 1; *see id.* at 5, 9.) Third, Brooklyn Union contends that even if TDA was potentially entitled to a *de micromis* exemption, it's motion is premature as the determination "would be a wholly fact-dependent question that would require discovery as to the amount and character of the hazardous substances released by TDA, the nature of TDA's connection to the Canal, and the nature of TDA's historic manufacturing processes." (*Id.* at 13.)  Fourth, Brooklyn Union alleges that "TDA misreads other key statutory provisions, including the *de micromis* exemption's burden of proof provisions." (*Id.* at 5.)  It argues that the "burden of proof provision cited by TDA on its face is applicable only '[i]n the case of a contribution action' under CERCLA Section 113(f)" while "[t]his case involves a cost recovery claim under CERCLA Section 107." (*Id.* at 12 (first alteration in original).)  Brooklyn Union therefore argues that "the burden is on TDA to demonstrate that the *de micromis* provision would exempt it from liability, which it simply cannot do in its motion to dismiss." (*Id.*)  Fifth, Brooklyn Union further argues that "[e]ven if the burden of proof were on Plaintiff, Brooklyn Union is at least entitled to discovery on the issue (i.e., the burden would not be on Brooklyn Union until the motion for summary judgment stage, not in the present motion to dismiss)."[23]  (*Id.* at 12 n.9.)

---

[23]  Section 107(o)(4) specifies that in a contribution action, such as those brought under Section 113, the "party bringing the action" bears the burden to prove that the *de micromis* exemption does not apply to the party claiming the exemption.  42 U.S.C. § 9607(o)(4); *see 68th St. Site Work Grp. v. Airgas, Inc.*, No. 20-3385, 2021 WL 4255030, at *24 (D. Md. Sep. 16, 2021) (Section 107(o) "places the burden of proof on [a] private plaintiff to demonstrate that defendant entities *do not* qualify for CERCLA's statutory exemptions."); *Hobart Corp. v. Dayton Power & Light Co.* (*Hobart I*), No. 13-CV-115, 2017 WL 5956911, at *15 (S.D. Ohio Nov. 30, 2017) (analyzing whether the plaintiffs proved the *de micromis* exemption did not apply because it was "a contribution action"); *City of Bangor v. Citizens Comm'ns Co.*, 437 F. Supp.

28

A *prima facie* case under CERCLA Section 107(a) requires a plaintiff to establish: (1) "the defendant falls within one of the four categories of potentially responsible parties set forth in § 107(a) (42 U.S.C. § 9607(a))"; (2) "the facility is indeed a 'facility' as defined by § 101(9) of CERCLA (42 U.S.C. § 9601(9))"; (3) "there is a release or a threatened release of hazardous substances at the facility"; (4) "the plaintiff incurred costs in responding to the release or threatened release"; and (5) "the costs incurred conform to the National Contingency Plan." *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 602–03 (2d Cir. 1999) (internal citations omitted); *see Niagara Mohawk Power Corp.*, 315 F.3d at 178 ("In order to establish liability under

---

2d 180, 215 n.13 (D. Me. 2006) (analyzing whether "the party seeking contribution" satisfied its "burden of demonstrating that the *de micromis* exemption did not apply").

While Section 107(o)(4) does not mention cost recovery actions brought under Section 107, the Court infers that the burden to prove that the *de micromis* exemption applies is on the party asserting the exemption as it is a defense to liability. *See* Caroline N. Broun and James T. O'Reilly, *Equitable Defenses in CERCLA actions — De Minimis Waste Contribution*, 2 RCRA and Superfund: A Practice Guide, 3d § 14:114 (Oct. Update 2025); Damon D. Tanck, *Getting Snagged in the Environmental Liability Web: The Trouble with CERCLA and Why the Brownfields Act Provides Only Modest Relief*, 35 Tex. Tech L. Rev. 1325, 1349–51 (2004); Mark S. Dennison, *Current Landowner's Right to Recover Cleanup Costs From Other Liable Parties Under § 107(a) of CERCLA*, 80 Am. Jur. Proof of Facts 3d 281 (2025) (*see* discussion in § 19 *De micromis exemption*).

TDA argues that because Brooklyn Union brings a contribution claim under Section 113, Brooklyn Union bears the burden to prove TDA is not entitled to the *de micromis* exemption. (Def.'s Mem. 7.)  Brooklyn Union argues that because it brings both a cost recovery claim under Section 107 *and* a contribution claim under Section 113, the statutory provision is not applicable "on its face." (Pl.'s Opp'n 12.)  Neither party cites to case law applying the *de micromis* exemption in a cause of action under both Sections 107 and Section 113, nor did the Court find any relevant cases.

However, at the motion to dismiss stage, the Court declines to conclude on this novel legal question.  To survive the motion, Brooklyn Union only needs to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court can revisit the burden of proof question at a later stage if TDA moves for summary judgment claiming the *de micromis* exemption and Brooklyn Union maintains both Sections 107 and 113 causes of action against TDA.

CERCLA, a plaintiff must make a *prima facie* showing that includes evidence that the defendant is a responsible party"); *N.J. Turnpike Auth. v. PPG Indus., Inc.*, 197 F.3d 96, 103–04 (3d Cir. 1999) ("In order to prove CERCLA liability under section 107, a plaintiff must prove: [(]1) that the defendant is a PRP; [(]2) that hazardous substances were disposed of at a 'facility'; [(]3) that there has been a 'release' or 'threatened' release of hazardous substances from the facility into the environment; and [(]4) that the release or threatened release has required or will require the plaintiff to incur 'response costs.'" (first citing 42 U.S.C. § 9607(a); and then citing *United States v. CDMG Realty Co.*, 96 F.3d 706, 712 (3d Cir. 1996))).

"The elements of an action under § 113(f)[] are the same as those under § 107(a)." *Bedford Affs.*, 156 F.3d at 427; *see Metro Container Grp.*, 450 F. Supp. 3d at 600 ("[T]he elements of the prima facie case for contribution [under Section 113] are the same as those for a cost recovery action under Section 107(a)." (alteration in original) (quoting *Champion Lb'ys, Inc. v. Metex Corp.*, No. 02-5284, 2009 WL 2496888, at *23 (D.N.J. Aug. 13, 2009) (citing *N.J. Tpk. Auth. v. PPG Indus., Inc.*, 197 F.3d 96, 104 (3d Cir. 1999)))); *Lammers Barrell PRP Grp. v. Carboline Co.*, No. 17-CV-135, 2020 WL 1503244, at *5 (S.D. Ohio Mar. 27, 2020) ("In order to establish CERCLA § 113(f) liability . . . [the p]laintiff 'must look to § 107 to establish the basis and elements of the liability' of [the defendant]." (quoting *Kalamazoo River Study Grp. v. Menasha Corp.*, 228 F.3d 648, 656 (6th Cir. 2000))); *Town of Oyster Bay v. Northrop Grumman Sys. Corp.*, No. 05-CV-1945, 2009 WL 10691086, at *10 (E.D.N.Y. May 14, 2009) (recognizing

30

that the *prima facie* elements required to show liability pursuant to CERCLA Sections 107 and 113 are the same).[24]

#### i.    Brooklyn Union has sufficiently pled TDA's potential CERCLA liability as an owner/operator of the Carroll Street Facility

TDA contends "CERCLA Section 107(a) creates four categories of potentially responsible parties: [(]1) the current owners and operators of a NPL Site (in this case, the [ ] Canal); [(]2) the past owners and operators of the NPL Site at the time of disposal of any hazardous substance; [(]3) 'arrangers' who arranged for the disposal of a hazardous substance owned or possessed by such person; and [(]4) 'transporters' who accepted for transportation any hazardous substances for disposal."  (Def.'s Mem. 8 (citing 42 U.S.C. § 9607(a)).)  First, TDA claims that its "property at 420 Carroll Street was never a Superfund [s]ite; therefore TDA is not a former owner or operator of a Superfund [s]ite" — instead "[t]he only Superfund [s]ite at issue in this litigation is the [ ] Canal."[25]  TDA contends that the language of the ROD which states "that [the] EPA regards the[] upland parcels [to the Canal] as separate and distinct from the [Gowanus Canal] Superfund Site itself" and the EPA "does not include TDA's former parcel as part of the Gowanus Canal Superfund Site."  (Def.'s Reply 4–5.)  Second, TDA relies on this ROD language in response to Brooklyn Union's argument that the EPA's guidance creates an expansive definition of "site" despite the absence of the term in the statute.  (*Id.* at 7.)  Third, TDA acknowledges that the RD UAO included "sources of contamination to the Canal" in its definition of the Site but argues "that *unilateral* declaration does not make it so."  (*Id.* at 9.)

---

[24]  TDA does not allege that Brooklyn Union fails to state a claim by insufficiently pleading a *prima facie* cause of action.  Instead, TDA's argument focuses on its status as that of an "arranger" or "generator" and not an "owner or operator."

[25]  (Def.'s Mem. 5; *see* Def.'s Reply 2 ("TDA accepts Plaintiff's allegation that TDA owned and operated on a parcel of land (which Plaintiff incorrectly labels a 'facility') at 420 Carroll Street from 1963 to 1999.").)

Fourth, as to the fact that the EPA named TDA in the RD UAO, TDA contends the UAO "incorrectly identifie[d] TDA as an 'owner' or 'operator'" as the EPA "seems to have unartfully used those as general words rather than as their CERCLA-defined terms of art, *i.e.*, as the current or former owner or operator *of a location that is being remediated* as an NPL "facility." (*Id.* at 9 n.5.)  Lastly, TDA contends that under Section 107(a), it is potentially only "a generator of hazardous substances that were transported to the Canal."[26]  (*Id.* at 2, 6.)

Brooklyn Union first argues that TDA's motion "either ignores or misapplies the appropriate standard of decision in a Rule 12(b)(6) motion to dismiss" by "not accept[ing] as true the factual allegations of [the] Complaint" which alleges that TDA's predecessor, Northeastern, "*owned and operated* a plastics manufacturing facility located at 420 Carroll Street . . . from 1963 to 1999" which released PAHs, VOCs, and SVOCs "to the Canal via direct discharge through runoff and sewer discharges."  (Pl.'s Opp'n 6 (quoting Compl. ¶¶ 156, 205).)  Second, Brooklyn Union contends that even "TDA recognizes that it was indeed the owner/operator of the 420 Carroll Street Facility, and that is sufficient to establish ownership liability based on the facility's discharge of hazardous substances to the Canal." (*Id.* at 7.)  Third, Brooklyn Union argues that "Superfund 'sites' can legally include the sources of the contamination."[27]  In support, Brooklyn Union relies on the RD UAO which defines the Gowanus Canal Superfund Site as the "100-foot wide, 1.8-mile-long canal located in the New York City borough of

---

[26]  The Court notes that TDA's argument, that TDA is not an owner and/or operator of a "facility" because it is not the owner and/or operator of the Canal, would entitle all Defendants to potentially claim a *de micromis* exemption, depending on the amount of liquids each party released.  The Court notes that no other Defendants have made such an argument at this time.

[27]  (Pl.'s Opp'n 7 (citing EPA, *Clarifying the Definition of "Site" Under the National Priorities List*, at 1 (May 1996) ("EPA Guidance of 'Site' Definition"), annexed to Henig-Elona Reply Aff. as Ex. L, Docket Entry No. 251-17).)

Brooklyn, Kings County, New York, *and also includes any areas which are sources of contamination to the Canal,* areas where contamination has migrated from the Canal, and/or suitable areas in very close proximity to the contamination which are necessary for implementation of the [w]ork." (*Id.* (emphasis added) (quoting RD UAO 5).) Moreover, the EPA identified TDA as a PRP by issuing it a GNL and naming it in both the RD UAO and the Bulkhead UAO. (*Id.* at 7 (citing Compl. ¶¶ 187, 192), 12.) Fourth, Brooklyn Union also notes that the EPA is authorized to "enter into administrative and judicial settlements with *de micromis* parties" and has not done so with TDA. (*Id.* at 12.)

A facility is defined under CERCLA as:

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

*ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*, 144 F.4th 360, 368 n.2 (2d Cir. 2025) (quoting 42 U.S.C. § 9601(9)); *see also Prisco*, 168 F.3d at 602 n.6 (quoting same); *Bestfoods*, 524 U.S. at 56 n.2 (quoting same); *New York v. Next Millennium Realty, LLC*, 160 F. Supp. 3d 485, 506 (E.D.N.Y. 2016) (quoting same). Courts have interpreted "facility" broadly. *See Bestfoods*, 524 U.S. at 56 ("[T]he term 'facility' enjoys a broad and detailed definition."); *ELG Utica Alloys, Inc.*, 144 F.4th at 368 ("CERCLA broadly defines 'facility' to include 'any site or area where a hazardous substance has been deposited.'" (quoting 42 U.S.C. § 9601(9))); *Cyprus Amax Minerals Co. v. TCI Pacific Commc'ns., LLC*, 28 F.4th 996, 1013 (10th Cir. 2022) ("Given the statutory definition of 'facility,' 'CERCLA's remedial purpose,' and cases from other federal courts, this court recognizes that the definition of 'facility' is broad: 'facility means whatever is

33

appropriate for the facts at hand . . . . Simply put, the term "facility" includes every place where hazardous substances come to be located.'" (quoting *Sierra Club v. Seaboard Farms Inc.*, 387 F.3d 1167, 1176 (10th Cir. 2004))); *United States v. Ne. Pharm. & Chem. Co., Inc.*, 810 F.2d 726, 743 (8th Cir. 1986) ("The term 'facility' should be construed very broadly to include virtually any place at which hazardous wastes have been dumped, or otherwise disposed of." (citation and internal quotation marks omitted)); *Anspec Co. v. Johnson Controls, Inc.*, 922 F.2d 1240, 1247 (6th Cir. 1991) (recognizing that "the First and Second Circuits have joined in proclaiming that [w]e will not interpret section [1]07(a) in any way that apparently frustrates the statute's goals, in the absence of specific congressional intent otherwise," the court found "the remedial nature of CERCLA's scheme requires the courts to interpret its provisions broadly to avoid frustrating the legislative purposes" (first alteration in original) (citations and internal quotation marks omitted)); *see also Cytec Indus., Inc. v. The B.F. Goodrich Co.*, 232 F. Supp. 2d 821, 836 (S.D. Ohio 2002) (finding that "usually, although perhaps not always, the definition of facility will be the entire site or area, including single or contiguous properties, where hazardous wastes have been deposited as part of the same operation or management"); *Clear Lake Props. v. Rockwell Int'l Corp.*, 959 F. Supp. 763, 768 (S.D. Tex. 1997) (rejecting the argument that a laboratory building and the ground upon which it sits constitute two distinct facilities); *S. Pac. Transp. Co. v. Voluntary Purchasing Grps., Inc.*, No. 94-CV-2477, 1997 WL 457510, at *5 (N.D. Tex. Aug. 7, 1997) (finding that "[u]nder the broad statutory definition, the presence of arsenic in these locations is sufficient to establish that the entire [c]ommerce [s]ite is a 'facility' within the meaning of CERCLA").

While "those actually responsible for any damage, environmental harm, or injury from chemical poisons [may be tagged with] the cost of their actions," "[t]he phrase 'owner or

34

operator' is defined only by tautology, however, as 'any person owning or operating' a facility, and it is this bit of circularity that prompts our review." *Bestfoods*, 524 U.S. at 56 (first alteration in original) (internal quotation marks and citation omitted) (quoting 42 U.S.C. § 9601(20(A)(ii)); *see Exxon Corp. v. Hunt*, 475 U.S. 355, 363 (1986) (CERCLA "unfortunately is not a model of legislative draftsmanship."); *Metro Container Grp.*, 450 F. Supp. 3d at 592 ("CERCLA is 'notorious for its lack of clarity and poor draftsmanship.'" (quoting *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 704 (3d Cir. 2019))).  "Under the plain language of the statute, any person who operates a polluting facility is directly liable for the costs of cleaning up the pollution." *Bestfoods*, 524 U.S. at 65; *see Niagara Mohawk Power Corp.*, 596 F.3d at 130 ("CERCLA is a remedial statute; it reaches as far back into the past as necessary to identify both the hazardous wastes present at a site and those responsible under the statute.  The logic is straightforward and simple — Congress wanted owners and polluters to identify and clean up all the hazardous waste they discovery.")  "Recognizing, however, the practical difficulties of this statutory scheme, Congress also empowered the court through § 113 to use 'such requirable factors *as the court determines* are appropriate' to reach a just result." *Niagara Mohawk Power Corp.*, 596 F.3d at 130 (citing 42 U.S.C. § 3613(f)(1) (emphasis added)).

Brooklyn Union sufficiently alleges in the Complaint that TDA is an "owner and/or operator" of the Carroll Street Facility, a polluting "facility" liable under Section 107(a)(1) or (2) and 113(f).  (Compl. ¶ 205.)  Brooklyn Union alleges, and TDA acknowledges, that TDA's predecessor, Northeastern, owned and operated the Carroll Street Facility from 1963 to 1999.[28]

---

[28]  Neither TDA nor Brooklyn Union argues that TDA should not be held accountable as a successor corporation to TDA's predecessor, Northeastern.  (*See generally* Def.'s Mem; Pl.'s Opp'n; Def.'s Reply.)  Given the supporting case law and the lack of objection, the Court does not address this issue further.  *See United States v. Iron Mountain Mines, Inc.*, 812 F. Supp.

(*Id.* ¶ 156.)  Brooklyn Union also alleges that the Carroll Street Facility "released hazardous substances to the Canal."  (*Id.* ¶ 156(c).))  Accepting these allegations as true, these contentions are sufficient for Brooklyn Union to withstand TDA's motion to dismiss.  (*See* Pl.'s Opp'n 6–7.) *See Metro Container Grp.*, 450 F. Supp. 3d at 601 (finding on a motion to dismiss that the amended complaint's allegations that all defendants were either generator/arrangers, or transporters, was sufficient to establish the first element to a cause of action under CERCLA); *City of Colton v. Am. Promotional Events, Inc.*, No. 09-CV-1864, 2012 WL 32606, at *6 (C.D. Cal. Jan. 5, 2012) (striking a *de micromis* exemption affirmative defense because the plaintiff, in the complaint, "proceeds under Section 107(a)(2) under a theory of 'owner or operator' liability" thus making the exemption inapplicable); *United States v. Iron Mountain Mines, Inc.*, 812 F. Supp. 1528, 1535–36 (E.D. Cal. 1992) (finding the plaintiff did state a claim upon which relief could be granted as the complaint sufficiently pleaded each of the elements required for a CERCLA Section 107 claim).[29]

---

1528, 1535, 1537 (E.D. Cal. 1992) (finding a defendant liable under Section 107(a)(2) based "on its alleged status as successor in interest" to the facility during the time in which hazardous substances were allegedly disposed of).

[29]  TDA objects to Brooklyn Union's reliance on *City of Colton v. American Promotional Events, Inc.* arguing that the defendant in *City of Colton* "did not oppose the government's motion to strike its *de micromis* exemption" and therefore "the court did not opine on the viability of the exemption."  (Def.'s Mem. 11.)  No. 09-CV-1864, 2012 WL 32606, at *6 (C.D. Cal. Jan. 5, 2012).  The Court finds TDA's objection unpersuasive.

First, TDA incorrectly asserts that the defendant did not oppose the government's motion — the defendant in *City of Colton* did submit opposition papers to oppose the government's motion to strike its *de micromis* exemption.  *See id.* at *1.  TDA submits the defendant's opposition briefing, although it does not cite to a page or quote to support its argument.  (*See* Def.'s opposition in *City of Colton,* No. 09-CV-1864, (C.D. Cal. Sep. 26, 2011) ("*City of Colton* Opp'n"), annexed to Henig-Elona Aff. as Ex. H, Docket Entry No. 251-10.)  In the briefing, the *de micromis* exemption under Section 107(o) is only discussed once, in a section titled "Goodrich [h]as [p]roperly [r]aised [d]efenses [c]hallenging [t]he United States' [a]ttempt [t]o [i]mpose [j]oint [a]nd [s]everal [l]iability," where the defendant explains that a party that is

36

Brooklyn Union's allegations are sufficient to withstand TDA's motion to dismiss. Courts typically analyze whether a party is entitled to the *de micromis* exemption at the summary judgment stage after the parties have conducted discovery. *See 68th St. Site Work Grp.*, 2021 WL 4255030, at *23–24 (finding the contractual equivalent of the *de micromis* exemption "constitute[d] [an] affirmative defense[] inappropriate to consider with respect to the pending 12(b)(6) motions" and while the defendants attempted to label their motions as summary judgment motions, which would be the appropriate stage to consider affirmative defenses, the court was "not convinced" that the burden of proof could be satisfied "on what amounts to a 'no-evidence' motion" as discovery was yet to be completed); *Metro Container Grp.*, 450 F. Supp. 3d at 602 n.14 (holding that the allegations in the complaint were sufficient to overcome the motion to dismiss, finding "proper stage of proceedings to determine [whether the *de micromis* exemption applied] is for a future date" as "[s]ome courts have made the [ ] determination at summary judgment"); *Hobart II*, 2019 WL 4621034, at *14 (finding the defendant was not entitled to the statutory *de micromis* exemption in deciding a summary judgment motion); *Hobart I*, 2017 WL 5956911, at *16 (determining, at the summary judgment stage, whether the defendant disposed of more than the *de micromis* volume of contaminants relying on the testimony of two witnesses and other discovery); *In re Voluntary Purchasing Grps. Inc. Litig.*, 2002 WL 31156535, at *8 (holding, on a motion for summary judgment, that the defendant was

---

entitled to the exemption cannot be held liable for its contribution. (*City of Colton* Opp'n 21–22.) Thus, this briefing demonstrated that the defendant did oppose the government's motion to strike its *de micromis* exemption, contrary to TDA's argument

Second, while TDA is correct that the court did not elaborate or further analyze the *de micromis* exemption, TDA fails to mention that the court struck the affirmative defense *because* the government "proceed[ed] under Section 107(a)(2) under a theory of 'owner or operator' liability" which made the *de micromis* exemption inapplicable. *See City of Colton*, 2012 WL 32606 at *6.

not entitled to the *de micromis* exemption because all of the elements required to claim the exemption were not satisfied).

> **ii.    Based on the RD UAO, EPA guidance and case law, the Court finds that the Gowanus Canal Superfund Site includes the Carroll Street Facility and TDA can be held liable as a subsequent owner of a contaminating "facility"**

TDA argues that the CERCLA "facility" is the Canal, *i.e.*, the Gowanus Canal Superfund Site exclusive of the surrounding businesses and thus TDA cannot be liable as an "owner" and or "operator" of the "facility."[30]  As supported by the language of the RD UAO, EPA guidance, and case law, the Court finds otherwise.

First, under the RD UAO, TDA's argument that the "facility," or the "Superfund site," is only that of the Canal, *i.e.*, the Gowanus Superfund Site excluding the surrounding businesses, is incorrect.  (Def.'s Mem. 8.)  The RD UAO defines the "the Gowanus Canal Superfund Site" as "an approximately 100-foot wide, 1.8-mile-long canal located in the New York City borough of Brooklyn, Kings County, New York, *and includes any areas which are sources of contamination to the Canal . . . .*"  *In the Matter of the Gowanus Canal Superfund Site*, Administrative Order for Remedial Design 5, No. CERCLA-02-2014-2001 (EPA Mar. 20, 2014) (emphasis added).  As the subsequent owner of a site which is alleged to have released hazardous substances into the Canal, defined as a "facility" under CERCLA, TDA, as subsequent owner of the Carroll Street Facility located at 420 Carroll Street from 1963 to 1999, can be subject to owner and operator liability under Section 107(a)(1) and/or Section 107(a)(2) and therefore is not entitled to a *de micromis* exemption.  *See Occidental Chem. Corp. v. 21st Century Fox Am.*, No. 18-CV-11273,

---

[30]    (Def.'s Mem. 8 (arguing CERCLA section 107(a) holds "the current owners and operators of a NPL Site (in this case, the Gowanus Canal)" and/or "the past owners and operators of the NPL Site at the time of disposal of any hazardous substance" liable); Def.'s Reply 3–6; *see also* Def.'s Mem. 5 ("TDA is not a former owner or operator of a Superfund [s]ite . . . [t]he only Superfund [s]ite at issue in this litigation is the Gowanus Canal.").)

2020 WL 13890454, at *4 (D.N.J. Sep. 11, 2020) (finding successor company, located within the Superfund site, that released hazardous substances into the Lower Passaic River and elsewhere within the Superfund Site as liable under CERCLA Section 107(a)); *United States v. Honewell Int'l, Inc.*, 542 F. Supp. 2d 1188, 1195, 1198 (E.D. Cal. 2008) (finding the third-party defendant who owned a facility that disposed of a hazardous substance and was "located within the boundaries of the [Superfund] [s]ite as determined by the U.S. EPA" as potentially liable within Section 107(a)(1)); *Carrier Corp. v. Piper*, 460 F. Supp. 2d 827, 836, 836 n.7 (W.D. Tenn. 2006) (finding the owner of a property located within the Superfund site, as defined by the administrative order, was potentially liable because that property was "part of the same facility" as the Superfund site); *City of Wichita v. Aero Holdings, Inc.*, 177 F. Supp. 2d 1153, 1162, 1165–66 (D. Kan. 2000) (finding the city liable under CERCLA Section 107(a)(1)), where it was the current owner or operator of a "facility," and the property was found to be within the Superfund site as defined by the EPA).

Second, even if the Court were to disregard the RD UAO and interpret the EPA's plain designation of the Gowanus Canal Superfund Site to only mean the area of the Canal, the conclusion would be the same — the owners of the businesses surrounding the Canal would still be held liable for their contamination contribution.[31] The definition of a "facility" under CERCLA and the general meaning of a "site" within CERCLA differ, although their connotations are interconnected — a Superfund site may include one or more facilities and a facility may include one or more areas (or sites) of hazardous substances. (*See* EPA Guidance of

---

[31] (*See* Def.'s Mem. 8 ("CERCLA Section 107(a) creates four categories of potentially responsible parties: [(]1) the current owners and operators of a NPL Site (in this case, the Gowanus Canal); [(]2) the past owners and operators of the NPL Site at the time of disposal of any hazardous substance . . . .").)

"Site" Definition 1.)  *See Lockheed Martin Corp. v. United States*, 35 F. Supp. 3d 92, 121 n.35 (D.D.C. 2014) ("Under CERCLA, the term 'facility' has two meanings": the first "serves as a catch-all for almost any original source from which a disposal might have occurred" and the second "includes any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." (internal quotation marks and citations omitted)); *United States v. Atchison, Topeka & Santa Fe Ry. Co.*, No. 92-5068, 2003 WL 25518047, at *45 (E.D. Cal. July 15, 2003) ("CERCLA's definition of 'facility' suggests several different concepts or applications."); *Lincoln Props. Ltd. v. Higgins*, No.91-760, 1993 WL 217429, at *19 (E.D. Cal. Jan. 21, 1993) (finding that each "site" where hazardous substances were disposed of or otherwise came to be located was a "facility" within the meaning of CERCLA); *see also United States v. Asarco Inc.*, 214 F.3d 1104, 1105 n.1 (9th Cir. 2000) ("For CERCLA purposes, the EPA utilizes the terms 'facility,' 'site,' and 'release' interchangeably."). In fact, the definition of a "facility" is explicitly "any *site* or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located."  42 U.S.C. § 9601(9) (emphasis added); *Bestfoods*, 524 U.S. at 56 n.2.  TDA misapplies CERCLA's terms, incorrectly equating the "facility" as only that of the Gowanus Canal Superfund Site, but arguing that Superfund site is only the Canal, while erroneously arguing that the EPA "unartfully" confuses CERCLA's terms, the statutory scheme it regularly administers and enforces.[32]

While the term "site" is not defined in the statute, the EPA has issued guidance clarifying the term under the NPL:

---

[32]  (*See* Def.'s Reply 9 n.5 (arguing the RD UAO "incorrectly identifie[d] TDA as an 'owner' or 'operator'" as the EPA "seems to have unartfully used those as general words rather than as their CERCLA-defined terms of art, *i.e.*, as the current or former owner or operator *of a location that is being remediated* as an NPL 'facility').)

40

> Although CERCLA does not define the term 'site,' it does explain related terms such a 'facility.' . . . According to CERCLA, there are two definitions of facility. The first definition is in broad terms of operable portions of properties . . . [while] [t]he second CERCLA definition of facility is essentially synonymous with the definition of 'site' as defined in the Hazard Ranking System (HRS), a screening tool that is EPA's primary mechanism for placing sites on the NPL . . . [h]owever, the CERCLA definition . . . is broader than the HRS definition of site.

(EPA Guidance of "Site" Definition 1.)

> Based on these descriptions, a 'site' is best defined as that portion of a facility that includes the location of a release (or releases) of hazardous substances and wherever hazardous substances have come to be located." As such, the extent of a site is not limited by property boundaries.

(*Id.*)

> "Identifying property that is part of an NPL site does not establish CERCLA liability. CERCLA liability is determined under CERCLA § 107, which makes no reference to NPL listing. Placing a site on the NPL does not create CERCLA liability where it would not otherwise exist. The fact that a parcel lies within the areas used to describe an NPL site does not impose liability on the owner or subsequent purchaser; liability is based on a release or threatened release of a hazardous substance from a facility.

(*Id.* at 3.)

> "If it is unclear who is or was the operator, or whether there are more than three [PRPs], a geographic-based name can be assigned. A site does not necessarily correspond to boundaries of any specific property that may give the site its name . . . [and] the name itself does not imply that the site is within the property boundary of a certain plant or installation or that all parts of the named property are contaminated."

(*Id.* at 2.)

Applying the above, the EPA's broad definition of a Superfund site includes the "sites" where hazardous substances were deposited and/or released as part of a "facility." Therefore, the Court would reach the same conclusion applying the EPA Guidance of "Site" Definition as it

41

would if it applied the language of the RD UAO —that the Gowanus Canal Superfund Site includes the Canal, the site where hazardous substances have been deposited, and the surrounding businesses, sites (or definitionally "facilities") which released hazardous substances into the Canal.  *See* RD UAO 5.  (*See* Pl.'s Opp'n 7.)

Even if the Court were to ignore the RD UAO and EPA guidance, case law demonstrates that the Canal itself would not be found to be the "facility" — instead, the polluting businesses would be held as one or several "facilities" and the owners and operators would still be held accountable — meaning, as applied to this case, TDA would still be held liable as a subsequent owner of the Carroll Street Facility.  In *Asarco LLC v. Cemex, Inc.*, a case factually similar to the case before the Court, the "diversion of water from the Rio Grande River to the American Canal [ ], a two-mile canal that the United States uses to remove its agreed-upon allotment of water from the river," oversaw by the United States International Boundary and Water Commission (the "USIBWS"), was found to be polluted (the "USIBWC Site").  21 F. Supp. 3d 784, 789 (W.D. Tex. 2014).  The USIBWC sought to resolve joint-and-several CERCLA liability against the plaintiff, ASARCO, LLC ("Asarco"), who operated various metal-smelting plants in El Paso, Texas, located just east of the USIBWC Site.  *Id.* at 790.  Asarco subsequently brought a CERCLA Section 113(f) contribution claim against the defendant, CEMEX, Inc. ("Cemex"), who was a successor in interest to Southwestern Portland Cement Company, which owned and operated a cement plant and limestone quarry located to the north of the USIBWC Site, alleging Cemex was also responsible for the pollution at the USIBWC Site.  *Id.* at 790–91.  The court found the plant was a "facility as defined by CERCLA."  *Id.* at 809.  The facts of this case are almost identical to *Asarco LLC* – the owners and/or operators of contaminating facilities surrounding a polluted public waterway may be held to be responsible under CERCLA.  There is

42

no claim or discussion in *Asarco LLC* that the Asarco or Cemex sites are not "facilities" nor that the USIBWC Site is the "facility" and thus only the United States could be held accountable. *See generally id.  Asarco LLC* is one case in a long line of cases that demonstrates that when a public waterway is polluted, the polluting businesses are held to be "facilities," and thus the owners and operators will be held liable. *See Wash. State Dep't of Transp. v. U.S.E.P.A.*, 917 F.2d 1309, 1310–12 (D.C. Cir. 1990) (confirming that the owners and/or operators of two facilities, identified by two EPA investigations, who were responsible for polluting the Commencement Bay within the broader "Commencement Bay Nearshore/Tideflats" NPL site could be held liable under CERCLA); *Town of Halfmoon v. General Elec. Co.*, 105 F. Supp. 3d 202, 207–11 (N.D.N.Y. 2015) (the plaintiff brought CERCLA claims against the defendant for operating two plants that discharged PCBs into the Hudson River, several sections of the Hudson River were designated as "Superfund sites" and both parties agreed that the plants were "facilities" and the defendant could be held liable as owner and operator of the plants); *Kalamazoo River Grp. v. Rockwell Int'l*, 107 F. Supp. 2d 817, 819–21 (W.D. Mich. 2000) (an approximately 130-mile polluted length of the Kalamazoo River was named a Superfund site and the owners and operators of the disposing sites were named PRPs under the broader Superfund site, which consisted of one facility that each PRP released hazardous substances within).  As supported by these cases, the Court finds unpersuasive TDA's argument that the Canal, or the Gowanus Canal Superfund Site excluding the surrounding businesses, is the "facility."

Based on the RD UAO and the EPA's guidance, as supported by case law, the Court finds that the Gowanus Canal Superfund Site is a Superfund site defined as the broader geographic area.  (*See* EPA Guidance of "Site" Definition 2.)  Within the Gowanus Canal Superfund Site are one or more "facilities," defined under CERCLA to include sites where

43

hazardous substances were released and/or deposited.  This conclusion is supported by the EPA's guidance which provides that "[i]dentifying property [a]s part of an NPL site does not establish CERCLA liability" because "CERCLA liability is determined under CERCLA § 107, which makes no reference to NPL listing." (*Id.* at 3.)  Instead, "liability is based on a release or threatened release of a hazardous substance from a facility," which encompasses "site[]s" where "hazardous substances have come to be located," in this case the Canal, and "the location[s] of a release (or releases) of hazardous substances," in this case the surrounding businesses that allegedly contributed to the pollution, which includes the Carroll Street Facility.  (*Id.* at 1). Therefore, the owners of these "sites" that contributed to the contamination, which are defined in CERCLA as "facilities", (*see id.*), may be held responsible.  *See First State Ins. Co. v. XTRA Intermodal, Inc.*, No. 22-CV-216, 2024 WL 1345646, at *2 (S.D. Ill. Mar. 29, 2024) (discussing the defendant's potential liability under Section 107 where the defendant was the subsequent owner and operator of "facility," located within the broader Superfund Site, that released hazardous substances into the Superfund site); *Arkema, Inc. v. Asarco, Inc.*, No. C05-5087, 2007 WL 1821024, at *8–9 (W.D. Wa. June 22, 2007) (finding the parties who owned/operated any of the numerous industrial facilities located on or near the Hylebos Waterway, which was part of the larger Superfund site, who released hazardous substances into the waterway were liable under CERCLA 107(a)(1) as owner and/or operators of "facilities"); *see also United States v. Meyer*, 120 F. Supp. 2d 635, 638 (W.D. Mich. 1999) (holding the sewer line built on the perimeter of the Superfund site which contributed to the contamination was a "facility" under CERCLA and thus the owner of that private sewer line could be held accountable).

44

As TDA is a subsequent owner of the Carroll Street Facility, a facility that is alleged to have released hazardous substances into the Gowanus Canal Superfund Site, TDA can be held liable as an "owner" and/or "operator" of a "facility" under CERCLA Section 107(a)(1) or (2).

### iii. The Court is not persuaded by TDA's arguments to find the CERCLA "facility" at issue is only that of the Canal and that TDA should be treated as an "arranger" or "generator" under Section 107(a)(3)

The Court is not persuaded by TDA's arguments that the Canal should be considered the "facility" and thus TDA can only be found to be an "arranger" or "generator" under CERCLA Section 107(a)(3), not an "owner or operator" under Section 107(a)(1) or (2). If the Court were to accept TDA's narrow definition, the results would contradict the statutory scheme, limit potential liability, and frustrate CERCLA's goals.[33] *See Niagara Mohawk Power Corp.*, 596 F.3d at 130 (CERCLA's "logic is straightforward and simple — Congress wanted owners and polluters to identify and clean up all the hazardous waste they discovery."); *Freeman*, 189 F.3d at 163 ("It was Congress' intent that CERCLA be construed liberally in order to accomplish [the statute's] goals." (quoting *General Elec. Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 285 (2d Cir. 1992) (per curiam))); *Anspec Co.*, 992 F.2d at 1247 (finding "the remedial nature of CERCLA's scheme requires the courts to interpret its provisions broadly to avoid frustrating the legislative purposes"); *BASF Corp. v. Albany Molecular Research, Inc.*, No. 19-CV-134, 2020 WL 3271316, at *14 (N.D.N.Y. June 17, 2020) (accepting the defendant's interpretation "would open a huge loophole in CERCLA's coverage" and thus "frustrate[ ] the statute's goals"

---

[33] (*Compare* Def.'s Mem. 8 ("CERCLA Section 107(a) creates four categories of [PRPs]: [(]1) the current owners and operators of a *NPL Site (in this case, the Gowanus Canal)*; [(]2) the past owners and operators of the *NPL Site* at the time of disposal of any hazardous substance . . . ." (emphasis added)) to 42 U.S.C. § 9607(a) (Creating liability for four categories of PRPs including: (1) the owner and operator of a *facility*; (2) "any person who at the time of disposal of any hazardous substance owned or operated any *facility* at which such hazardous substances were disposed of . . . ." (emphasis added)).)

45

(alteration in original) (quoting *Shore Realty Corp.*, 759 F.2d at 1045)); *New York v. Solvent Chemical Co., Inc.*, 218 F. Supp. 2d 319, 336 (W.D.N.Y. 2002) (holding that for a term not defined in CERCLA, "a liberal judicial interpretation of the term is required in order to achieve CERCLA's 'overwhelmingly remedial' statutory scheme.'" (quoting *United States v. Pesses*, 794 F. Supp. 151, 157 n.21 (W.D. Pa. 1992))); *Int'l Clinical Lab'ys, Inc. v. Stevens*, 710 F. Supp. 466, 472 (E.D.N.Y. 1989) (rejecting the defendant's argument because "[t]o adopt such a rule would do little to promote the effectiveness of private actions and would not further CERCLA's goal of encouraging environmental cleanup activities" (citing *City of New York v. Exxon Corp.*, 663 F. Supp. 609, 616–17 (S.D.N.Y. 1986))).

First, TDA's arguments that the "facility" is the Gowanus Canal Superfund Site, excluding the surrounding areas, aligns with Superfund sites that are privately owned where the owner could clearly be held liable. *See Dent v. Beazer Materials and Servs. Inc.*, 156 F.3d 523, 529–31 (4th Cir. 1998) (finding the three parties who collectively owned the properties comprising the Superfund site were liable under 107(a) as owners or operators of a "facility"); *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1497–98 (11th Cir. 1996) (finding the Superfund site was a facility under CERCLA and thus the defendant, who the parties did not dispute held the title to the Superfund site, could be held liable as the current owner or operator of a facility under Section 107(a)(1)). In support of its argument, TDA states that "[a]t the time that CERCLA was enacted, and ever since, Superfund [s]ites have typically been chemical or hazardous wastes processing or recycling facilities, landfills, or other land-based hazardous waste disposal properties." (Def.'s Mem. 8.) In contrast to TDA's listed "typical" Superfund sites, the Canal is a public waterway without a singular owner and therefore the Gowanus Canal Superfund Site requires further analysis than simply concluding based on how Superfund sites

have historically been defined.[34]  Instead, TDA's listed applications further support the Court's

finding that the broader Gowanus Canal Superfund Site includes the polluting "land-based

hazardous waste disposal properties," such as the Carroll Street Facility — because Superfund

sites typically have included "land-based hazardous waste disposal properties," a holding that the

Gowanus Canal Superfund Site only includes the Canal would be in opposite.  *See In the Matter*

*of the Gowanus Canal Superfund Site* 5, Administrative Order for Remedial Design, No.

CERCLA-02-2014-2001 (EPA Mar. 20, 2014) (the EPA defined the "Gowanus Canal Superfund

Site" to include both the Canal *and "any areas which are sources of contamination to the Canal"*

(emphasis added)).

Second, TDA's interpretation equating "facility" with that of a "Superfund site" is

contrary to the extensive case law about Superfund sites that encompass multiple parcels of land,

expanding beyond traditional property borders and thus implicating numerous "facilities" and/or

owners of land.  *See Next Millennium Realty LLC*, 2025 WL 2689701, at *1, *9 (denying motion

to dismiss where the plaintiff alleged that the defendants were current or former owners of

---

[34]  Further differentiating TDA's listed "typical" Superfund sites is the fact that the Canal is a public waterway not owned by any one entity.  Applying TDA's logic — that the Canal is the "facility" and thus only the Canal's owner is liable — would potentially eliminate all liability because no one entity owns the Canal.  Extending TDA's theory, each contaminator would then be considered a "generator" or "transporter," and thus possibly entitled to the *de micromis* exemption, which could lead to no person being required to clean up the Canal.  This situation would lead to an outcome contrary to the statutory spirit and goals of CERCLA.  *See BASF Corp. v. Albany Molecular Research, Inc.*, No. 19-CV-134, 2020 WL 3271316, at *14 (N.D.N.Y. June 17, 2020) (accepting the defendant's interpretation "would open a huge loophole in CERCLA's coverage" and thus "frustrate[ ] the statute's goals" (alteration in original) (quoting *Shore Realty Corp.*, 759 F.2d at 1045)); *Int'l Clinical Lab'ys, Inc. v. Stevens*, 710 F. Supp. 466, 472 (E.D.N.Y. 1989) (rejecting the defendant's argument because "[t]o adopt such a rule would do little to promote the effectiveness of private actions and would not further CERCLA's goal of encouraging environmental cleanup activities" (citing *City of New York v. Exxon Corp.*, 663 F. Supp. 609, 616–17 (S.D.N.Y. 1986))).

numerous properties located within the Superfund site); *Atchison, Topeka & Santa Fe Ry. Co.*, 2003 WL 25518047, at *47 (The "EPA need not designate one facility per owner or otherwise prove that an owner owns an entire facility to establish liability under Section 107 of CERCLA . . . . CERCLA expressly contemplates that there can be more than one owner of a facility." (citations omitted)); *Meyer*, 120 F. Supp. 2d at 638 ("Because hazardous substances may come to be located in several discrete locations in a given case, there may be several 'facilities' related to a single hazardous waste discharge or disposal.")  In these cases, one or more "facilities" can be designated for a single Superfund site, or alternatively, one or more parcels of land can be jointly designated as a single facility within a Superfund site — this is a fact-based determination for the court to decide when analyzing where the contamination originated and is located.  *See United States v. Township of Brighton*, 153 F.3d 307, 313 (6th Cir. 1998) ("The words of the statute suggest that the bounds of a facility should be defined at least in part by the bounds of the contamination."); *Niagara Mohawk Power Corp. v. Consol. Rail Corp.*, 291 F. Supp. 2d 105, 125 (N.D.N.Y. 2003) ("Separate parcels should be considered as a single facility if they 'cannot be reasonably or naturally divided into multiple parts or functional units[,]' . . . [but] where parcels are naturally divisible into parts or functional units, they should not be considered as a single facility." (quoting *United States v. 150 Acres of Land*, 204 F.3d 698, 709 (6th Cir. 2000))), *rev'd on other grounds*, *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112 (2d Cir. 2010); *Alprof Realty LLC v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, No. 09-CV-5190, 2012 WL 4049800, at *8 (E.D.N.Y. Sep. 13, 2012) ("The cases cited by the parties establish that a contaminated site that is or was managed as a whole constitutes a single facility for CERCLA purposes — regardless of whether the area crosses property lines — and that a widely contaminated area should not unnaturally be divided into

48

multiple facilities in order to limit a party's liability."). Therefore, the Court finds that the Carroll Street Facility is a "facility" within the Gowanus Canal Superfund Site, and as such, TDA can be held liable as subsequent owner. (*See* Def.'s Mem. 5 (The "property at 420 Carroll Street was never a Superfund [s]ite; therefore, TDA is not a former owner or operator of a Superfund [s]ite.").)[35]

Third, TDA's reliance on the EPA explicitly excluding contaminated upland parcels of the Canal in the ROD is misplaced. (Def.'s Reply 4.) TDA argues the "ROD simply does not include TDA's former parcel as part of the Gowanus Canal Superfund Site . . . [n]or was it identified by [the] EPA as an upland source that was referred to NYSDEC for investigation or remediation." (*Id.* at 5–6.) However, the Carroll Street Facility is not "upland" from the Canal, instead it is directly located on the Canal. The examples of the "upland" parcels explicitly stated in the ROD consist of facilities "[*a]djacent* to the Canal," not facilities located on the Canal. (ROD 4 (emphasis added).) In addition, while the ROD generally discusses the Gowanus Canal Superfund Site and the Canal, the subsequent UAOs, especially the RD UAO, further elaborated on the RD phase — specifically relevant, the RD UAO expanded geographically on the definition of the Superfund site and included the Carroll Street Facility. (*See* ROD 10.) *See In the Matter of the Gowanus Canal Superfund Site* 5, Administrative Order for Remedial Design, No. CERCLA-02-2014-2001 (EPA Mar. 20, 2014). This aligns with the EPA historically "not specif[ing] any exact geographic boundaries" of an NPL site, but later clarifying the exact boundaries based on "additional stud[ies]." *See Wash. State Dep't of Transp.*, 917 F.3d at 1910, 1910 n.1. TDA cannot argue in good faith that the Court should rely on the Superfund site's

---

[35] For clarity, neither party asks the Court to determine if the Gowanus Canal Superfund Site consists of one or more "facilities" for CERCLA purposes. Therefore, the Court does not opine on this issue.

definition in the EPA's ROD, while also arguing that the Court should not rely on the definition in the EPA's RD UAO because "that <u>unilateral</u> declaration does not make it so." (Def.'s Reply 9.)

Lastly, the Court is not convinced by TDA's argument that it should be held to be a "generator" or "arranger" under CERCLA Section 107(a). (*Id.*; Def.'s Mem. 10.) In support of this argument, TDA cites only one case — *City of Bangor v. Citizens Communications Co.*, 437 F. Supp. 2d 180 (D. Me. 2006) — arguing that "the [c]ourt recognized that a former owner of a facility that discharged to a waterway was an 'arranger' who could qualify as a *de micromis* party (not an 'owner' or 'operator' who would be disqualified for the exemption)." (Def.'s Mem. 10.) In *City of Bangor*, the city brought a claim under CERCLA Section 107 against the defendant based on arranger or generator liability, alleging the defendant company was involved in contaminating an approximately ten-acre section of the Penobscot River, known as Dunnett's Cove. 437 F. Supp. 2d at 182, 214. Following trial, the court made numerous findings of fact and conclusions of law including that the defendant, Citizens Communications, had primary responsibility for the contamination as the owner of a manufactured gas plant (the "Bangor MGP") that disposed of tar-laden wastewater through the "Old Stone Sewer" which discharged directly into Dunnett's Cove. *Id.* The court also held that the city was responsible as owner of the now defunct Old Stone Sewer and the sewer that replaced it. *Id.* at 191–93, 214. In footnote 13 of the decision, the court briefly addressed the *de micromis* exemption. *Id.* at 215 n.13. The court found that the amount of tar discharge into Dunnett's Cove after January 1963 was "relatively minimal," and explained that "[i]n light of these factual findings, it would appear that an entity responsible for any post-January 1963 tar discharged from the Bangor MGP during regular plant operations could fall under the 'de micromis exemption' to CERCLA liability." *Id.*

50

The footnote concludes with the court stating that "[the defendant] ha[d] presented no evidence suggesting that the *de micromis* exemption would not apply to any successor operator of the Bangor MGP." *Id.*

While *City of Bangor* is factually similar, involving a public water body contaminated by a MGP, TDA misses two key distinctions. First, the *City of Bangor* opinion is the court's findings of fact and conclusions of law following a twelve-day trial, where the court heard evidence, and received "additional evidence in the form of exhibits, stipulations and one trial deposition," and closing arguments from both parties, in addition to the parties' closing briefs. 437 F. Supp. 2d at 182. In comparison, this decision is predicated on a motion to dismiss which the Court must decide without reference to any evidentiary record. Second, the type of liability differed in *City of Bangor* compared to this case. *City of Bangor* involved liability against the city as an "owner or operator" of the Old Stone Sewer *and* liability against Citizens Communications as an "arranger" who contributed to the contamination through use of the Old Stone Sewer — the court found the city was required to pay for the cleanup and the defendant Citizens Communications required to contribute to the costs the city incurred for such cleanup. 437 F. Supp. 2d at 214–15. In this case, Brooklyn Union proceeds against all defendants as "owners and operators" of facilities that directly contributed to the Canal's pollution, arguing each are independently liable for the costs which Brooklyn Union incurred to initiate cleanup of the Canal. (Compl. ¶ 205; *see also id.* ¶ 156(c) (alleging TDA's predecessor released hazardous substances into the Canal both directly, through "two floor drains that discharged directly to . . . the Canal" and stormwater and surface runoff, *and* also indirectly, through use of "a floor drain that discharged to the [New York] City sewers").) TDA's liability is more similar to that of the city in *City of Bangor*, an owner and operator which directly contributed to the waterway's

51

pollution, as compared to Citizens Communications, an arranger who used a third party's sewer to contribute to the contaminated waterway.  Therefore, given the differing procedural posture and the factual distinctions in liability described above, the Court finds *City of Bangor* does not impact the Court's analysis.

Regardless, the Court finds that accepting the allegations contained within the Complaint as true, Brooklyn Union has sufficiently alleged that TDA is a successor owner or operator of the Carroll Street Facility that contributed to the contamination of the Gowanus Canal Superfund Site, and therefore can be accountable under Section 107(a)(1).  *Bestfoods*, 524 U.S. at 65 ("Under the plain language of the statute, any person who operates a polluting facility is directly liable for the costs of cleaning up the pollution.").  The Court therefore cannot find on this motion to dismiss that TDA is entitled to a *de micromis* exemption under CERCLA.[36]

---

[36] Because the Court finds that Brooklyn Union sufficiently alleges that TDA is an owner and operator (under successor liability) and thus ineligible for the *de micromis* exemption at this stage, the Court declines to discuss TDA's second argument — that Brooklyn Union does not allege TDA's contribution exceeded the 110-gallon threshold amount that would exclude it from the *de micromis* exemption.  Moreover, even if the Court found that TDA is entitled to the *de micromis* exemption under Section 107(o) as an arranger or transporter, Brooklyn Union's allegations in the Complaint are sufficient at the motion to dismiss stage and entitle Brooklyn Union to discovery to determine the amount of TDA's contributions.  *See Metro Container Grp. v. AC&T Co.*, 450 F. Supp. 3d 583, 602 n.14 (E.D. Pa. 2020) (holding that plaintiff was "entitled to discovery as to the exact contours of the amount [of hazardous waste]" where the complaint imprecisely alleged that "each defendant [was] responsible for the contribution of drums of hazardous substances, which themselves surpass the threshold").  Because the Court denies TDA's motion to dismiss, it also denies TDA's request for attorneys' fees.  (*See* Def.'s Mem. 9.) *See supra* Section II.b; *Seoul Viosys Co., Ltd. v. P3 Int'l Corp.*, No. 16-CV-6276, 2017 WL 6942744, at *6 (S.D.N.Y. Sep. 22, 2017) (denying the defendant's request for attorney's fees where it did not prevail on its Rule 12 motion); *Carlton Grp., Ltd. v. Mirabella SG SpA*, No. 16-CV-6649, 2017 WL 3530370, at *5 (S.D.N.Y. Aug. 16, 2017) (denying the defendant's request for fees and costs where the court denied the defendant's Rule 12(b)(6) motion to dismiss the complaint).

### III.  Conclusion

For the foregoing reasons, the Court denies TDA's motion to dismiss.

Dated:  March 29, 2026
         Brooklyn, New York

SO ORDERED:


_____/s/MKB_____
MARGO K. BRODIE
United States District Judge
